1
2
3
4

IN THE U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

5

| | |
|---|---|
| JOANN LEDOUX, a single woman. | |
| Plaintiffs, | NO. |
| vs. | **COMPLAINT** |
| OUTLIERS, INC. (d/b/a THESIS, THESIS NOOTRPICS, FIND MY FORMULA, and FORMULA), a Delaware Corporation; DANIEL FREED, individually; MATT RUBIN, individually; BRAND NUTRACEUTICALS, INC. (d/b/a BRAND NUTRA), a New York Corporation; BRAND PACKAGING GROUP, INC. (d/b/a BRAND NUTRACEUTICALS), a New York Corporation; and John and Jane Does 1-5. | |
| Defendants. | |

## I.    INTRODUCTION

COMES NOW the above-named plaintiff, by and through her attorneys of record, Jocelyn C. Stewart, of **Law Office of Jocelyn C Stewart, Corp**. and Talis Abolins of **mctlaw**; and alleges the following in support of her claims:

## II.    PARTIES

1.    JOANN LEDOUX is a single woman who lived and worked in Pierce County, Washington, from June 2018 to March 2023, when she purchased, received, and consumed the defective products at issue.  She now resides in California.

2.    Defendant OUTLIERS, INC. doing business as THESIS NOOTROPICS, a Delaware Corporation ("THESIS") was and is a Delaware Corporation, with a principal place

COMPLAINT - 1

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

of business in New York, NY.  With assistance from the co-defendants, THESIS manufactures, markets, sells, and delivers its products for Washington consumers.  On information and belief, Plaintiff alleges that the THESIS's members, managers, and decision-makers who are directly and personally responsible for the design, manufacture, and distribution of the THESIS Formula Nootropic Supplement product ("Formula") at issue include Dan Freed; Adam Greenfield; Matt Rubin; and Jacob Malamed.

3.    Defendant DANIEL FREED is the Chief Executive Officer and co-founder of THESIS, a formulator of the Formula products at issue, and a citizen and resident of New York.

4.    Defendant MATTHEW RUBIN is the Director of Supply Chain for THESIS, responsible for the ingredients, manufacturing, and packaging of the Formula products at issue, and a citizen and resident of New York.

5.    Collectively, Defendants THESIS, FREED, and RUBIN shall be referred to as the "THESIS DEFENDANTS".

6.    Defendant BRAND NUTRACEUTICALS, INC. (d/b/a BRAND NUTRA), was and is a New York Corporation with its principal place of business in New York ("BRAND NUTRA").  BRAND NUTRA is a nutritional supplement manufacturer, packager, and seller directly involved in producing and packaging the Formula product at issue.

7.    Defendant BRAND PACKAGING GROUP, INC. (d/b/a BRAND NUTRACEUTICALS, BRAND NUTRA, and BG PACK) is a New York Corporation with its principal place of business in New York ("BG PACK").  BG PACK is a nutritional supplement manufacturer, packager, and seller with responsibility for the Formula product at issue ("BG PACK"), and is a self-described subsidiary of BRAND NUTRACEUTICALS, INC.

COMPLAINT - 2

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

8.      Collectively, Defendants BRAND NUTRA and BG PACK shall be referred to as the "BRAND NUTRA DEFENDANTS".

9.      JOHN and JANE DOES 1-5 are persons whose names and addresses are unknown, but who directly and/or personally participated in the tortious acts and omissions in the design, manufacture, packaging, distribution, and sale of the Formula product at issue.

## III.   JURISDICTION AND VENUE

10.      This action is for damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest, costs, attorneys' fees, and declaratory relief. 28 U.S.C. § 1332(a).

11.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction.  Jurisdiction is proper in the United States District Court for the Western District of Washington because there is complete diversity between Plaintiff (a California resident) and the Defendants, who are resident and/or incorporated in Delaware and New York.  This Court has jurisdiction over the Defendants based on their stream of commerce into Washington.

12.      Venue is proper this Court under 28 U.S.C. § 1391(b)(2), as a substantial part of the events and  omissions giving rise to  the claim occurred  in  Washington.  The  wrongful marketing, distribution, and sale of the Defendants' defective products were directed at and into Washington, in violation of Washington's Consumer Protection and Product Liability Acts.  In addition, Plaintiff's injuries were all suffered in Washington, where she consumed the defective products leading directly to the damages sought in this litigation.

## IV.   INTRODUCTION

13.      Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully

COMPLAINT - 3

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

stated herein.

14. There is a high demand among health-conscious individuals for safe over-the-counter products that support enhanced cognitive function, heightened mental acuity, focus, concentration, clarity, and energy. "Nootropics" (also known as smart drugs or cognitive enhancers) are a subset of drugs and are presented as pharmaceuticals or supplements for the improvement of cognitive functioning and the support of brain health.

15. Some nootropics are verified as safe for human consumption in the form of FDA-approved drugs. Some of these drugs are prescribed and used to treat conditions affecting the brain such as ADHD and dementia. The nootropics that are prescribed and used under the supervision of a medical provider have been carefully researched and developed through clinical testing and are generally recognized as safe and effective for a variety of medical conditions.

16. Other nootropics are offered as over-the-counter dietary supplements and are not regulated the same way as FDA-approved drugs. The efficacy of over-the-counter nootropic supplements that anyone can buy is not well-known. The side effects for over-the-counter nootropic supplements are largely under-researched and, because of their newer appearance on the market, long-term effects are mostly unknown. A series of case studies involving these drugs found that they could have adverse effects like sudden psychiatric symptoms for people with a history of mental illness or substance abuse.[1] Substance abuse

---

[1] Farid Talih, MD and Jean Ajaltouni, MD National Center for Biotechnology Information, Innovation in Clinical Neuroscience, Nov-Dec 2015 - Probable Nootropicinduced Psychiatric Adverse Effects: A Series of Four Cases

COMPLAINT - 4

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

and mental health are often intertwined, and sometimes certain drug use can trigger underlying mental health problems and make them worse.

17.    Over-the-counter nootropics have become increasingly popular in the United States, with hundreds of millions of dollars in sales each year.  With this demand for safe over-the-counter products, an increasing number of dangerous and unapproved products are finding their way into the marketplace.  Because of the relative lack of regulatory and medical oversight, consumers of over-the-counter nootropics can fall victim to unscrupulous companies that do not comply with industry standards for the safe design, manufacture, and sale of over-the-counter supplements.  Nootropic products are increasingly promoted by unscrupulous companies and individuals who seek to profit from adulterated and misbranded products, based on unproven and unlawful marketing claims.

18.    For example, some of the companies promote their over-the-counter nootropic supplements as safe and lawfully sold alternatives to prescription medications like Adderall® and Ritalin®.  Such claims violate industry and regulatory standards and expose consumers to serious risks.

19.    The stigma of mental health has doubtlessly contributed to the enticing allure of "all-natural" alternatives to medications, as has the ease at which over-the-counter supplements can be ordered, delivered, and dispensed without appropriate safeguards or administration by medical professionals.

20.    It is improper and dangerous for companies selling dietary supplements to claim

COMPLAINT - 5

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

that their over-the-counter products can or should be used as alternatives to prescription medication for the treatment or prevention of medical conditions. When a dietary supplement product makes such claims, they are unlawfully promoting the sale of "drugs". The sale of drugs in this manner is prohibited, as the products have not followed the pre-market approval process required for drugs.

21.    Many dietary supplement products are promoted as "natural" and therefore safer than prescriptions administered under the supervision of medical providers. But this is not necessarily the case, particularly when the supplements contain drugs or other ingredients for which premarket safety has not been established. In addition, marketing materials may be misleading, failing to accurately specify what is and is not included in each supplement.

22.    Unless safe standards for sourcing and manufacturing supplements are followed, consumers are at risk of ingesting ingredients that differ from those specified on websites and packaging. Product batch reports should accurately reflect the ingredients identified to the consumer and actually contained in the product. However, when companies fail to design and follow good sourcing and manufacturing practices for their supplements, the consumer is at unreasonable risk of harm based on the exposure to ingredients that were never disclosed, including ingredients that are adulterated and unsafe.

23.    Unbeknownst to consumers, some nootropic-selling companies produce products with ingredients from less than reputable sources, such as overseas suppliers who do not adhere to standards for purity and potency. Ingredients obtained from such sources are prone to be contaminated with substances, including stimulants, that are not disclosed in the supplier's batch reports and product recipes, or on their packaging. The problem is exacerbated when supplement companies fail to perform the sampling and testing necessary to confirm that the product meets specifications for identity, purity, strength, and composition, and for limits

COMPLAINT - 6

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

on those types of contamination that may adulterate the finished batch of the dietary supplement.

24.    In some cases, the nootropic-selling companies have sold products that have been dosed with undisclosed drugs, including Amphetamines.[2]

25.    For years, Federal agencies (and courts) have attempted to protect the public from Amphetamines, particularly in light of the market for methamphetamine and its highly addictive and deadly properties. After decades of reported abuse, in 1965 the United States Food and Drug Administration (USFDA) limited amphetamine to prescription use, but non-medical use remained common. Amphetamine became a Schedule III controlled substance in the U.S. under the Controlled Substances Act in 1971.  During the early 1970s, Amphetamines were re-classified a Schedule II controlled substance under the Psychotropic Substances Act.

26.    The FDA has taken a number of actions against unscrupulous nootropic manufacturers and sellers.  For example, a number of FDA Warning Letters have been issued, including the March 17, 2023, WARNING LETTER to Defendant BG PACK.[3]

27.    Given the dangers posed to consumers by dangerous products, Plaintiff seeks to

---

[2] Paiva, R.; Correia, M.; Delerue-Matos, C.; Amaral, J.S. Adulteration of Brain Health (Cognitive, Mood, and Sleep Enhancement) Food Supplements by the Addition of Pharmaceutical Drugs: A Comprehensive Review of Analytical Approaches and Trends. Foods 2024, 13, 908. https://doi.org/10.3390/foods13060908

[3] Attached as Exhibit A.  See also Exhibit B (FDA Warning Letter to Peak Nootropics, LLC, aka Advanced Nootropics, February 5, 2019); and Exhibit C (FDA Warning Letter to Pure Nootropics, LLC, February 5, 2019).

COMPLAINT - 7

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

hold these Defendants accountable for the painful losses they have caused and to issue a preliminary and permanent injunction barring these Defendants from the distribution and sale of THESIS' Formula Nootropic Supplement products in Washington which have been misbranded and/or sold as unapproved drugs.

## V.    STATEMENT OF FACTS

1. Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully stated herein.

2. THESIS was founded by DANIEL FREED and Adam Greenfield in or about 2017, as a direct-to-consumer e-commerce company that sells "nootropic" health supplements.

3. According to the THESIS DEFENDANTS' website, the company's nootropic supplements are a "class of compounds that enhance cognitive function by helping to promote neurotransmitter activity to support motivation, mood, memory, and focus."

4. The THESIS DEFENDANTS market and sell their products as unique nootropic blends designed to cater to different cognitive goals, including but not limited to improving productivity, and maintaining mental sharpness and working memory. THESIS represents that its products quickly and safely help to support "increased focus, creativity, energy, and memory in capsule form."

5. The THESIS DEFENDANTS also market and sell their products as safe alternatives to stimulants, and as a means "to address the challenges faced by those relying on stimulants." According to THESIS, its nootropic supplements "are a powerful alternative to stimulants, providing similar benefits, minus the jitters, crash, and side effects." In marketing, THESIS represents that its Formula Nootropic Supplement capsules provide an alternative to

COMPLAINT - 8

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

Adderall® that will not make users feel "like a zombie". THESIS marketing also references not having the "cons" of Adderall®, that "Adderall wasn't really all that effective in the long run," while THESIS products purport to be "life-changing" and will cause its users to "wake up and be motivated."

6.    The THESIS DEFENDANTS use social media channels, including Facebook and Instagram, to promote their nootropic supplements as a powerful alternative to prescriptions, such as Adderall®.

7.    In one Facebook promotion, the THESIS DEFENDANTS offer the video testimony of an individual identified in surgical scrubs as "Chad Deal, MD" of "Southern Surgical Arts". At times, Dr. Deal is shown wearing a surgical hat labeled "Dr. HIDEF". In one video segment, entitled "Surgeon gives his thoughts on Adderall", Dr. Deal is featured in a surgical had labeled Dr. HIDEF, explaining that "[t]he problem with Adderall is that it burns you out and it does not work anymore." The aggressive pitch goes on to insist that consumers try the "natural", "safe" and "life-changing" THESIS nootropics.[4]

8.    The THESIS DEFENDANTS also receive and publish comments from consumers and the public regarding the use of their supplements as alternatives to prescription drugs, such as Adderall®. The THESIS DEFENDANTS monitor and respond to these comments, continuing to endorse this use of their product as a superior product to Adderall®, even in the face of comments that criticize the company for its disparagement of medically supervised use of medications that have been deemed effective and/or necessary for and by

---

[4]    Thesis Facebook Reel found at https://www.facebook.com/reel/890143849604868 (last accessed September 21, 2024).

COMPLAINT - 9

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

many consumers with serious medical conditions.

9.     The supplement products sold by THESIS DEFENDANTS included the "Find My Formula" nootropic supplement kits (hereafter "Formula").   This is the product that THESIS DEFENDANTS marketed and shipped to Plaintiff between March and September of 2021.

10.     The Formula kits included a month's worth of THESIS' Formula Nootropic Supplements, with sets of powder-packed capsules designed to target areas including: "Energy", "Clarity", "Creativity", "Logic", and "Motivation".

11.     The THESIS DEFENDANTS partnered with the BRAND NUTRA DEFENDANTS to assist with the manufacture and packaging of their Formula Nootropic Supplement products.

12.     The BRAND NUTRA DEFENDANTS hold themselves out as an industry leader for the contract manufacturing and packaging of nootropic supplements.

13.     THESIS contracted with the BRAND NUTRA DEFENDANTS to aid in producing and packaging the Formula capsules sold to consumers.

14.     The THESIS DEFENDANTS and BRAND NUTRA DEFENDANTS have worked together to manufacture and package the Formula nootropic supplement capsules, and are jointly responsible for their design, sourcing, contents, manufacturing, labeling, and marketing.

***Industry Standards Ensure the Safety Of Supplement Consumers***

15.     There are important industry and regulatory standards that govern the safe design, sourcing, content, manufacture, labeling, and marketing of  Formula supplement products.  These standards are designed to ensure the safety of consumers who ingest supplements.

COMPLAINT - 10

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

16.     These standards are particularly important when it comes to nootropic supplements. There is an increasing level of adulteration among nootropic supplements.   One type of adulteration frequently reported in food supplements concerns the addition of active pharmaceutical ingredients (APIs) to ensure the effects advertised for the product. This can lead consumers to believe that the efficacy was due to the properties of safe, natural ingredients. Supplements adulterated with APIs are a major public health problem since they may seriously affect the health of consumers, with several cases of adverse effects, hospitalizations, and even deaths being reported.   Stimulants rank high among unauthorized pharmaceuticals in food supplements, including but not limited to Adderall®.[5]

17.     The industry standards that govern the DEFENDANTS' Formula Nootropic Supplement products include the following:

a.     Supplements must not be adulterated with undeclared, active pharmaceutical ingredients.  This would include Adderall®.

b.     The facilities where the supplement ingredients are harvested, processed, packaged, or held must follow Good Manufacturing Practices (GMPs), including those outlined in 21 CFR 111 for dietary supplements and 21 CFR 117 for foods. Adherence to GMPs helps ensure that ingestible food and dietary supplement

---

[5]     Rafael Paiva, et al., *Adulteration of Brain Health (Cognitive, Mood, and Sleep Enhancement) Food Supplements by the Addition of Pharmaceutical Drugs: A Comprehensive Review of Analytical Approaches and Trends*, Food Supplements: Composition, Health Benefits, Adulteration, and Safety (Foods / Volume 13 / Issue 6 / March 16, 2024) (https://doi.org/10.3390/foods1300908).

COMPLAINT - 11

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

products are safe from contamination due to the handling and processing of the ingredients and finished product.

c.    The supplement manufacturer must ensure that each finished batch of a dietary supplement: (1) meets the product specifications for identity, purity, strength, and composition; and (2) is within the limits for the types of contamination that may adulterate the finished batch of the dietary supplement.

d.    The manufacturer must conduct appropriate tests or examinations to verify the identity of any supplement component that is a dietary ingredient, prior to its use.

e.    Scientifically valid tests and examinations must be employed by the manufacturer to determine whether the specification for a supplement has been met, or the identity of the component has been verified.

f.    The protocols for qualifying suppliers and accepting ingredients must be sufficient to ensure that they are not adulterated.

g.    The facilities where the supplement ingredients are harvested, processed, packaged, or held must be registered.   Registration invites FDA inspection to see that GMP's are followed.

h.    Selling a product that makes medical claims requires registration as a drug, and compliance with the regulations that govern drugs.   Those who manufacture and sell drugs are required to meet the minimum requirements for establishing that the drug is safe for its intended use, as through a demonstration of being generally recognized as safe and effective (GRASE).  Sellers of drugs must also demonstrate the drug is safe for its intended use through FDA regulatory pathways for new, generic, or nonprescription drugs.

COMPLAINT - 12

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

i.    A product manufacturer or distributor must conduct a premarket verification of safety for any new dietary ingredient (NDI) that it proposes to distribute for human consumption.  The Notification of the premarket verification of safety ("NDIN") must be submitted to the FDA 75 days before the product is marketed.  Until this standard of safety first is satisfied, the NDI-containing product is considered an unsafe and adulterated product under industry and regulatory standards.  *See* 21 USC 350b(a), (b), and (d); 21 CFR 190.6(a).

h.    Supplements must include proper labeling to help consumers use the product safely. Proper labeling means clear identification of actual ingredients, clear indications for use/directions for use, and warnings that help consumers understand the safe use of the product.  Labeling must include any information material for the safe use of the product as per 21 CFR 1.21.  When products are improperly labeled they are considered misbranded.

18.    If the foregoing standards for supplement safety are not followed, the resulting supplements are adulterated, not reasonably safe for human consumption, and not merchantable for over-the-counter sales.

***The Formula Products Are Defective, Adulterated, and Violate Industry Standards***

19.    The THESIS and BRAND NUTRA DEFENDANTS failed to satisfy basic standards for establishing the safety of supplement products sold for human consumption.

20.    The Formula Nootropic Supplement products sold to JOANN LEDOUX were not safe as designed, manufactured, or marketed, and the DEFENDANTS failed to adequately warn JOANN LEDOUX of the dangers and risks associated with the Formula capsules that she ingested.

21.    Early in 2022, the FDA inspected BRAND NUTRA DEFENDANTS' facilities and

COMPLAINT - 13

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

documented various violations of the standards set forth above, including documented failures to properly verify or test the ingredients of finished dietary supplement products.   These violations are specified in an FDA Warning Letter issued to BRAND NUTRA DEFENDANTS on March 17, 2023.[6]

22.    FDA discussions with BRAND NUTRA management confirmed that no testing had been conducted on new dietary ingredients when they were first received by RAND NUTRA.

23.    Some of the Formula Nootropic Supplement capsules have been adulterated with Adderall®.  This is a direct violation of the industry standards and regulations which prohibit the manufacture, sale, or distribution of dietary supplements containing undeclared, active pharmaceutical ingredients.   This was also a violation of the standards that prohibit the manufacture and sale of unapproved drugs.

24.    According to batch records for the Formula Nootropic Supplement products sold to JOANN LEDOUX, some of the capsules' ingredients included Aniracetam and Oxiracetam.

25.    Aniracetam is a pyrrolidinone-type cognition enhancer that has been clinically used in the treatment of behavioral and psychological symptoms of dementia following stroke and in Alzheimer's disease.

26.    Aniracetam was approved for use as a drug in Europe and Japan.  Aniracetam was later withdrawn from the Japanese market.

27.    The National Institutes of Health have identified Aniracetam as a drug that is

---

[6] FDA Warning Letter to BRAND PACKAGING GROUP, INC. – MARCS-CMS 633651 (March 17, 2023).   Located at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/brand-packaging-group-inc-633651-03172023.

COMPLAINT - 14

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

possibly marketed outside the United States.

28.    Aniracetam is not approved for use as a drug in the United States.

29.    It is improper to design, manufacture, or sell the unapproved drug Aniracetam as an ingredient in supplements in the United States.

30.    Oxiracetam is an unapproved new drug.  On at least one occasion the Department of Justice has prosecuted individuals for the sale of unapproved and misbranded drugs, including Oxiracetam.[7]

31.    Other ingredients in the Formula Nootropic Supplements included Zembrin and Vinpocetine.  Both of these ingredients are considered New Dietary Ingredient (NDI) under industry and regulatory standards.

32.    The DEFENDANTS have never filed NDI Notifications containing proper premarket verifications of safety for the human consumption of the NDIs contained in their Formula Nootropic Supplements.

33.    The FDA has already documented that the proposed use of Zembrin in a supplement would not be justified because there was insufficient verification of safety for human consumption.

34.    The FDA has concluded that Vinpocetine should be excluded from supplements because it was previously authorized for investigation as a new drug before it was ever marketed as a dietary supplement or as a food.  The FDA further noted that Vinpocetine is associated with

---

[7] DOJ Press Release, *Fort Collins Couple Sentenced to Federal Prison for Illegally Selling Unapproved Drugs* (June 10, 2022).  Accessed at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/press-releases/fort-collins-couple-sentenced-federal-prison-illegally-selling-unapproved-drugs.

COMPLAINT - 15

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

adverse reproductive effects and should not be taken by women who could become pregnant.

35.    The Formula Nootropic Supplement products appear to include other ingredients that are NDIs for which no premarket verification of safety has ever been filed.  This includes Centrophenoxine (also known as Meclofenoxate), Agmatine Sulfate, Forskolin 20%, and/or Uridine-5-monophosphate.

36.    The THESIS and BRAND NUTRA DEFENDANTS' Formula Nootropic Supplement products were promoted, distributed, and sold as alternatives to prescription medications like Adderall® and Ritalin®, even though consumers using the Formula Nootropic Supplements are not monitored under the supervision of a prescribing medical provider.  This is a direct violation of the standards that protect consumers by prohibiting the marketing and sale of supplements as alternatives to prescription drugs that are administered under the supervision of a provider.

37.    These DEFENDANTS' branding and labeling failed to convey the actual identity or potency of ingredients, including drugs, contained within their Formula Nootropic Supplement products.  These defendants did not provide adequate warnings or instructions for the use of these supplements.

38.    Rather than verify the Formula Nootropic Supplement products' safety, the THESIS and BRAND NUTRA DEFENDANTS have instead designed, marketed, and sold a product based on deceptive business activities, including contamination and adulteration of their Formula Nootropic Supplements with stimulants that have addictive properties, and which carry the risk of severe adverse events, including impacts to consumer safety and drug-drug interactions.

39.    THESIS tailored its efforts to sell the products to consumers using an online questionnaire that advertised individualized products for the unique desired effects for each

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

consumer that boasts scientifically backed allure. THESIS offered its dangerous Formula Nootropic Supplement by monthly subscription, targeting military and first responders.

40.     The THESIS and BRAND NUTRA DEFENDANTS all profited from unfair and deceptive business practices by manufacturing, distributing, selling, and/or validating dangerous Nootropic supplements that are laced with, contaminated by, or adulterated with Adderall® and other undisclosed ingredients in products to Washington residents.

### Plaintiff JOANNE LEDOUX's Purchase and Use of the Formula Supplements

1.     At all times material to this Complaint, JOANN LEDOUX resided in Tacoma, Pierce County, WA. She was beloved by her friends, family, colleagues, supervisors, and patients. She was a loyal and successful employee with the United States Army, working to benefit the lives of her patients at Madigan Army Medical Center ("MAMC"), where she performed work administering anesthesia to service members, veterans, and their families.

2.     JOANN LEDOUX volunteered to serve her country as an Army Nurse in March 2005 and was transferred to Joint Base Lewis-McChord ("JBLM"), Washington in June 2018. JOANN LEDOUX served the patients of MAMC as a Certified Registered Nurse Anesthetist ("CRNA") in life-changing and life-saving surgeries. While performing anesthesia for service members and their families, JOANN LEDOUX balanced the demands of deploying to a war zone and life as a full-time mother to her two beloved children, whose lives have also been impacted.

3.     At 38 years old, JOANN LEDOUX was going through a divorce and sought out ways of being healthy, fit, and physically active. She loves spending time outdoors, and she is passionate about self-improvement, health, meditation, and yoga. Given her long work hours and need to focus on the myriad physical symptoms of her patients during surgery, JOANN LEDOUX struggled with concentrating, remaining focused, alert, and awake during and after surgery.

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

4.      JOANN LEDOUX saw several forms of THESIS advertising (including Exhibit 2) on social media, which retargeted her from her peaked interest.  She saw THESIS' promotion of the Formula Nootropic Supplements as safe, all-natural, a better alternative to "Adderall®," and backed by scientific practices.  She saw its published ingredient list.

5.      In reasonable reliance on THESIS' representations, JOANN LEDOUX decided to purchase a subscription from THESIS for her supposedly individualized packets of Formula Nootropic Supplements.

6.      THESIS required JOANN LEDOUX to fill out an online quiz so THESIS could generate a specific collection of their products that they characterize as personalized for her needs, and the desired cognitive improvements.

7.      After JOANN LEDOUX finished the quiz, THESIS accepted JOANN LEDOUX's payment and shipped her the first of a several-month, monthly subscription containing four (4) different packs of their Formula Nootropic Supplements.

8.      The Formula packs shipped to JOANN LEDOUX came in a box and were labeled Logic, Motivation, Energy, and Clarity.  Each pack contained multiple packets that contained several capsules and pills.  A brochure was included in the box.

9.      On or about March 18, 2021, JOANN LEDOUX signed up for the monthly subscription.  This subscription meant that she paid for, and THESIS delivered the same blend of Formula Nootropic Supplements eight (8) times, paying $79.00 for each monthly subscription, until JOANN LEDOUX canceled her monthly subscription in late September or early October 2021.

10.     Each monthly subscription contained a box of each of the four packs of blends.

11.     At least one of her filled orders of Formula Nootropic Supplements contained a

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

product that was adulterated with Amphetamines, and the exact proprietary blend of ingredients consistent with Adderall® specifically.

12.    At least one of the packets contained ingredients that were not disclosed on THESIS' website which advertised the list of ingredients in its Formula Nootropic Supplements.

13.    As a direct and proximate result of THESIS's false promises, JOANN LEDOUX unknowingly consumed Amphetamines, and the exact proprietary blend of ingredients consistent with Adderall® specifically sold to her and provided by THESIS.

14.    JOANN LEDOUX's unknowingness was reasonable because THESIS specifically advertised its Formula Nootropic Supplements were natural, capitalizing on the desire to avoid pharmaceuticals, and containing the ingredients listed on THESIS' website.

15.    JOANN LEDOUX's unknowingness was reasonable because, even though she felt more energized, she associated that with THESIS' advertisement that Formula Nootropic Supplements were all natural and better than Adderall®.

16.    JOANN LEDOUX, as any reasonable consumer would, interpreted THESIS' advertisement to mean that its Formula Nootropic Supplements induced a similar effect to the mental alertness, focus, and concentration associated with Adderall® without actually containing Adderall® or any other prescription-requiring substances and that they did not have the negative side effects associated with Adderall® and other prescription Amphetamines.

17.    Had THESIS truthfully informed JOANN LEDOUX of the truth regarding the contents of its Formula Nootropic Supplements, JOANN LEDOUX would not have purchased or used THESIS' products.

18.    Between March 2021 and late September 2021, JOANN LEDOUX used one to two packets of THESIS' Formula Nootropic Supplements per day, for approximately six (6) months.

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

*The Tragic Consequences of LEDOUX's Use of the Formula Supplements*

19.    JOANN LEDOUX is a medical nurse officer in the United States Army who attained the rank of Major.  She had only been a nurse for two years and was a First Lieutenant when she applied to be selected for the Army's graduate anesthesia program.  JOANN LEDOUX was the youngest officer on active duty selected to go to the United States Army's Graduate Program in Anesthesia Nursing in 2008.  In approximately January 2021, JOANN LEDOUX was working as an anesthesia provider at Madigan Army Medical Center ("MAMC") on Joint Base-Lewis-McChord "JBLM", Washington.  JOANN LEDOUX volunteered to serve her country as a nurse beginning in March 2005.

20.    Members of the US military are subject to random drug screening for illicit substances and substances, which are controlled and require valid medical prescription.

21.    Members of the US military are strictly prohibited under the Uniform Code of Military Justice ("UCMJ") from possessing or consuming illicit substances or from consuming controlled substances without a valid and current prescription.

22.    Amphetamines are a Schedule II Controlled Substance, some forms of which may be lawfully ingested by military personnel provided they have a valid and current prescription.

23.    In accordance with United States Army policy, JOANN LEDOUX submitted a sample of her urine as part of a unit drug screen on August 16, 2021.

24.    Army personnel followed procedure and protocol in securing and safeguarding her sample and sent it to an accredited drug testing laboratory to screen for the presence of illicit and controlled substances.

25.    JOANN LEDOUX's August 16, 2021, drug screen tested positive for the presence of Amphetamines, which was reflected in a memorandum report dated September 27, 2021.

COMPLAINT - 20

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

JOANN LEDOUX was alerted by her commander that her sample tested positive for the presence of Amphetamines on September 30, 2021.

26.    When a service member tests positive on a military urinalysis for a substance that is not facially illicit and for which a member could be authorized to take based on a prescription, the Army appoints what is known as a Medical Review Officer ("MRO").

27.    The MRO is appointed to review the available medical and prescription records for the service member who tested positive for the controlled substance.  However, because many service members obtain emergent or routine care at facilities that are off military installations for which records are not shared within the military platform, the MRO will invite the service member in for a verbal interview.

28.    During that interview, the MRO will ask the service member whether they have prescriptions for any substances that are not included in their military medical records.  The MRO is empowered to review any additional records or prescriptions that the service member directly provides to the MRO to include in their report about whether there exist any valid or non-expired prescriptions that could account for the positive urinalysis result.

29.    MAMC on JBLM, Washington where JOANN LEDOUX was working appointed Dr. Daren R. Mealer, MD, EMPA, FAAFP to conduct the medical review as MRO for JOANN LEDOUX.

30.    Dr. Mealer met with JOANN LEDOUX on September 30, 2021. During that meeting, JOANN LEDOUX did not furnish a prescription for medication that contained Amphetamines.

COMPLAINT - 21

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

31.    JOANN LEDOUX did provide a list of one or more over-the-counter substances and the supplements that she had been taking at the relevant time, including Sudafed, which she initially suspected was the likely cause of her positive result.

32.    JOANN LEDOUX did not exclude Sudafed as a potential cause until weeks or even months later.  She then came to believe that the Formula Nootropic Supplement product was the likely source of her positive Amphetamine result.

33.    JOANN LEDOUX also informed Dr. Mealer about her monthly subscription to THESIS' Formula Nootropic Supplements.  Dr. Mealer annotated that THESIS' products may belong to "a class of supplements that may contain amphetamines."

34.    Dr. Mealer's annotation was later reinforced by Mr. John Travis, a Principal Technical Manager, Senior Chemist, and Research Scientist for the National Sanitation Foundation International "NSF International."

35.    NSF INTERNATIONAL is a company that provides services including the testing and certification of dietary supplements for safety and quality.

36.    Mr. Travis is a recognized expert in chemistry, supplements, and adulteration.

37.    Mr. Travis has discussed NSF INTERNATIONAL's testing of THESIS' supplements provided to LEDOUX and encouraged testing of THESIS' Formula Nootropic Supplements.

38.    Mr. Travis was suspicious of "red flags" on THESIS' packaging and website. "Generally, products that have claims of increased focus, increased mental acuity, things of that nature, have a greater probability of being adulterated than ones that do not."

39.    Due to THESIS' false and incomplete statements, and JOANN LEDOUX's reasonable reliance thereon, JOANN LEDOUX was prosecuted in a felony military criminal trial

COMPLAINT - 22

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

due to her positive urinalysis result for the presence of Amphetamines under Article 112(a) of the UCMJ.

40.    As part of the discovery process in JOANN LEDOUX's criminal trial, when asked for records by Army felony prosecutors, MARK RUBIN, the Head of Supply Chain for THESIS, provided false order history records on behalf of THESIS that denied JOANN LEDOUX received all of the THESIS' Formula Nootropic Supplement products she ordered.  When pressed and MARK RUBIN learned JOANN LEDOUX had retained order numbers and boxes of THESIS' Formula Nootropic Supplement products, MARK RUBIN produced accurate order history and fulfillment records confirming all of her fulfilled orders.

41.    THESIS' Chief Executive Officer, Daniel Freed, testified with his own hired lawyer present telephonically during JOANN LEDOUX's felony court-martial.

42.    Mr. Freed admitted that THESIS tells consumers that they will benefit from "[i]mproved energy levels, focus, [and] the ability to increase productivity."

43.    Mr. Freed, through his lawyer, refused to answer questions regarding the source of THESIS' ingredients, how THESIS manufactures its ingredients, and how THESIS tests its ingredients.  Mr. Freed testified that at the time JOANN LEDOUX was purchasing his company's product their manufacturer and producer was BRAND NUTRA.

44.    Mr. Freed admitted that THESIS does not screen its ingredients for the presence of Amphetamines.  Mr. Freed also admitted that to the best of his knowledge and belief, BRAND NUTRA likewise does not screen its ingredients for the presence of Amphetamines.

45.    Mr. Freed falsely testified that THESIS does not "specifically market as a natural alternative to Adderall®." (See Exhibit 3).  Mr. Freed admitted THESIS marketing mentions Adderall®.

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

46.     JOANN LEDOUX is suffering the loss of a full pension from the US Military as a direct and proximate result of the products that were imported, manufactured, marketed, distributed and/or sold by each of the Defendants.

47.     As a direct result of DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX is being administratively separated, losing millions in bonuses, pay, ordinary pension, and other military benefits.  Due to DEFENDANTS' false and incomplete statements, JOANN LEDOUX was "administratively flagged" by the Army and ineligible for promotion from Major to Lieutenant Colonel, and she is being made to leave the military before the expiration of her mandatory retirement date.

48.     Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX suffers from PTSD and other emotional distress, and she suffered from Severe Clinical Depression and even Suicidal Ideation.

49.     Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX suffered physiological withdrawal effects when she suddenly terminated the use of THESIS' Formula Nootropic Supplements.  She experienced depression combined with cravings and dependency symptoms, including that she was unable to stay awake, alert, or mentally present, despite ingesting copious amounts of caffeine.  She gained substantial weight as a result of depression and attendant overeating.  JOANN LEDOUX fell into a spiraling depression from the feelings of shame and embarrassment at being a medical provider who was duped by DEFENDANTS' marketing.  She often neglected her own basic needs including hygiene, sleeping too much at times, or bouts of insomnia.  JOANN LEDOUX's mental thought processes were overrun by looping and intrusive thoughts of shame from her unwitting ingestion of Adderall® without a prescription and other ingredients in DEFENDANTS' Formula Nootropic Supplement products.  JOANN LEDOUX

COMPLAINT - 24

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

experienced overwhelming bouts of guilt that she had offered DEFENDANTS' Formula Nootropic Supplement products to her medical provider colleagues and friends for their own ingestion, which thankfully they all declined.

50.     Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was forced to endure the felony law enforcement level investigation and felony prosecution trial process, during which time she battled Severe Clinical Depression and even Suicidal Ideations. The severe emotional distress she encountered during her court-martial trial culminated in an emotional breakdown moments after the jury closed to deliberate.  The military judge presiding over JOANN LEDOUX's trial who also witnessed this breakdown beckoned defense attorneys to inquire about the need for behavioral health intervention.  JOANN LEDOUX's severe emotional distress of enduring wrongful prosecution did not end at her full and righteous acquittal; she has struggled to regain her sense of self and remains shattered by these experiences.  Most of her identity and pride as a nurse, anesthesia provider, and Army officer were lost in the process.

51.     Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX remains at risk of losing primary custody of her two children.  JOANN LEDOUX's parenting plan that makes her the primary custodian to her children is contingent on her continued military service and after service, she must now cede custody of her children to her children's father and if she wants any parenting time, she must reside where he does.

52.     Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was titled and indexed in the National Crime Information Center (NCIC) database following the military law enforcement probable cause decision for wrongful use of a controlled substance.  The NCIC titling and indexing will come up in any search about JOANN LEDOUX by potential

COMPLAINT - 25

employers and in background checks for forty years from the date it was entered into the system, limiting her future employability.

53.    Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX's felony military criminal trial exposed her to Dismissal (the officer equivalent of Dishonorable discharge), forfeiture of all pay and allowances, and confinement for five years.  The fear and anxiety of incarceration for false allegations plagued her for more than a year while she awaited trial.

54.    Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was humiliated, being forced to participate in an "Impaired Provider Program" at MAMC.  Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was command-directed and required to attend the Army Substance Abuse Program (ASAP).  She was further required to complete the Army Soldier For Life Transition Program, which is required when under military investigation and prosecution or anticipated involuntary separation, the equivalent of being fired for cause.  Every year she remains a credentialed provider, JOANN LEDOUX must answer questions related to the DEFENDANTS' wrongful acts and omissions.

55.    Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was further humiliated by having her security clearance revoked and was disallowed from using any military computer device. JOANN LEDOUX remains required to undergo periodic repeat inquisitions about her security clearance.

56.    Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was further humiliated when she was relieved of her duties as an anesthesia provider, was temporarily restored to them, and then had them subsequently revoked; JOANN LEDOUX remains in constant fear of her Certified Registered Nurse Anesthetist license being revoked. JOANN LEDOUX faces

COMPLAINT - 26

departing the military with the overwhelming worry that she will be unemployable as a nurse anesthetist.

57.    Due to DEFENDANTS' wrongful acts and omissions, JOANN LEDOUX was humiliated among her colleagues by failing to be promoted to Lieutenant Colonel, which otherwise would be routine and customary for nurse anesthesia providers. JOANN LEDOUX has since been removed from meaningful consideration for any career advancements, or leadership positions including taking command.

## CAUSES OF ACTION AND DAMAGES

1.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully stated herein.

2.    The DEFENDANTS in this case all failed to warn JOANN LEDOUX that THESIS' Formula Nootropic Supplement product is: (a) wrongfully distributed, marketed and sold for human consumption without the required premarket verification of safety; (b) contained ingredients and drugs obtained from outside the U.S.; (c) contained pharmaceuticals; and (d) caused dependence, addiction, and withdrawal in regular users.

3.    Each and every Defendant wrongfully contributed to JOANN LEDOUX's escalating cycle of Amphetamine tolerance, dependence, and use, which led predictably to the levels that ultimately caused her positive urinalysis.

4.    JOANN LEDOUX and her beneficiaries have incurred and will continue to incur enormous general and special damages in an amount to be determined by the jury at the close of trial.

5.    The DEFENDANTS were all manufacturers, distributors and/or product sellers

COMPLAINT - 27

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

of dietary supplements under Chapter 7.72 RCW, and they are jointly and severally liable for the damages caused to JOANN LEDOUX and her beneficiaries.

## COUNT ONE – ALL DEFENDANTS – NEGLIGENCE

6.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully stated herein.

7.    The DEFENDANTS were all negligent and careless in the sourcing, import, design, testing, manufacture, labeling, marketing, distribution, and/or sale of Formula Nootropic Supplement products.

8.    The THESIS and BRAND NUTRA DEFENDANTS, as product manufacturers and sellers, were negligent and careless in their design, manufacture, distribution, promotion and sale of the Formula Nootropic Supplement products.

9.    The THESIS and BRAND DEFENDANTS violated the industry and regulatory standards specified above.

10.    The DEFENDANTS should have known that their Formula Nootropic Supplement products were developed in a way that presented an unreasonable risk of adulteration and were unreasonably dangerous and injurious to individuals who were never warned of the various unsafe ingredients and adulterants they contained.

11.    The unreasonable risks of using supplements adulterated with unapproved drugs and unsafe dietary ingredients were never properly understood, identified, disclosed, or addressed by the DEFENDANTS.

12.    DEFENDANTS' failures to discharge their duties were a direct and proximate cause of Plaintiff's injuries as described above, including the amphetamine poisoning that adversely affected JOANNE LEDOUX, triggering the positive drug test.

COMPLAINT - 28

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

1

2

**COUNT TWO – ALL DEFENDANTS – UNFAIR TRADE PRACTICES**
**[Wash. Rev. Code Section 19.86.010, et seq.]**

3

13.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully

4

stated herein.

5

14.    The acts by DEFENDANTS in this cause of action include, but are not limited

6

to, the following deceptive and unfair acts with respect to the Formula Nootropic Supplement

7

product:

8

      a.    Designing, manufacturing, promoting, and selling Formula Nootropic
9
Supplement products without disclosing or warning against the existence of
adulterated new dietary ingredients and unapproved drugs, including the
10
pharmaceutical Adderall.

11
      b.    Misrepresenting that the product contains only the highest quality ingredients,
rigorously tested for purity.

12
      c.    Misrepresenting that the product contains only ingredients sourced in the USA.
      d.    Misrepresenting that the product contains substances that are the most potent
13
and well-studied nootropics on the market.
      e.    Misrepresenting that the product is appropriately used for medicinal benefits.
14
      a.    Misrepresenting that the product possesses many therapeutic effects, including
providing its consumers with increased focus, clarity, concentration, and
15
energy.
      b.    Misrepresenting that the product is safe and appropriate for regular human
16
consumption.
      c.    Misrepresenting that the product is never adulterated.
17
      d.    Misrepresenting that the product has no serious adverse health effects.
      e.    Failing to disclose adequate information about the safety and efficacy of the
18
Formula Nootropic Supplement product, either before or after Plaintiffs'
purchase.
19
      f.    Failing to provide adequate warnings, labels or instructions about the product's
dangerous propensities, and the fact that consumers would test positive for the
20
presence of unprescribed amphetamine, such as Adderall®.

21

15.    Such acts occurred in the course of trade or commerce in the State of

22

Washington.

23

16.    Such acts affected, and still affect, the public interest of all the citizens of the

24

State of Washington.

25

COMPLAINT - 29

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

17.    Such acts caused injury to JOANN LEDOUX in her property and business, by forcing her to incur substantial expenditures on a product that instead of being safe and effective, was the cause of her positive urinalysis for Amphetamines, leading directly to the infliction of staggering emotional and financial losses associated with a court-martial by her employer.

**COUNT THREE –FAILURE TO WARN**
**[Wash. Rev. Code Section 7.72.010(4) and .030(1)]**

18.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully stated herein.

19.    Each named DEFENDANT was personally and directly involved in the design, manufacture, packaging, labeling, marketing, distribution, and sale of the defective Formula Nootropic Supplement products that injured JOANN LEDOUX.

20.    The DEFENDANTS' Formula Nootropic Supplements were continuously sold without adequate warnings or instructions regarding the presence of Adderall®, serious health risks of the product, including the risks of abuse, dependence, addiction, overdose, and death.

21.    An ordinary consumer would reasonably conclude that DEFENDANTS' Formula Nootropic Supplements were not reasonably safe when sold without warnings or instructions about the existence of pharmaceutical drugs, unapproved NDIs, and serious adverse health risks, including the contamination and adulteration risks of Amphetamines and related injuries suffered by JOANN LEDOUX.

22.    In addition, at the time of manufacture, the likelihood that DEFENDANTS' Formula Nootropic Supplements would cause and contribute to the serious harms inflicted on JOANN LEDOUX rendered DEFENDANTS' warnings and instructions completely

COMPLAINT - 30

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

inadequate, even though reasonable instructions and warnings about the risk of those serious harms could easily have been provided.

23.    At the times and on the occasions in question, JOANN LEDOUX was using the DEFENDANTS' Formula Nootropic Supplements for the very purposes intended and promoted by the DEFENDANTS, including: (a) human consumption; (b) relief from fatigue, the inability to concentrate, decreased motivation, and lack of focus or clarity; and (c) as a safe and natural alternative to "Adderall."

24.    Without proper warnings and instructions, the products were unreasonably dangerous, unfit for their intended use, and defective.

25.    If the products had been sold with appropriate warnings and instructions regarding their health risks, including but not limited to adequate disclosure of the major risks associated with ingesting unapproved pharmaceutical stimulants, then JOANN LEDOUX's injuries from the products would not have occurred.

26.    The DEFENDANTS are liable for all damages caused by their failures to provide adequate warnings and instructions that would have prevented the injuries caused by their defective and unreasonably dangerous nature of their products. These manufacturer DEFENDANTS are all subject to strict liability for these damages.

27.    The DEFENDANTS also had a continuing, post-sale duty to warn regarding the unreasonable risk of harm associated with the product after the product had been distributed to JOANN LEDOUX.

28.    After JOANN LEDOUX began purchasing and ingesting the products, DEFENDANTS knew or should have known of the increasing scientific and medical information confirming the serious risks and dangers associated with their contaminated or

COMPLAINT - 31

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

adulterated product, including the risks associated with a powerful pharmaceutical stimulant that was only fit for medically supervised use.

29.    After JOANN LEDOUX, began purchasing and ingesting the products, DEFENDANTS all breached their duty to issue adequate post-sale instructions and warnings to reduce and prevent the foreseeable risk of harm and injury to JOANN LEDOUX from the products.

30.    All DEFENDANTS failed to exercise reasonable care to provide adequate post-sale instructions and warnings to JOANN LEDOUX and other Washington residents about the serious health risks and dangers of the product, including that it contained Amphetamines, a Controlled Substance, and posed a risk of injury to those ingesting such products.

31.    As a direct and proximate result of the lack of reasonable and adequate post-sale instructions or warnings regarding the defects in DEFENDANTS' Formula Nootropic Supplements, Plaintiff suffered the injuries described above, including the staggering physiological and emotional damages associated with the unknown ingestion of unprescribed Amphetamines, leading to adverse physical effects and the severe trauma of a military court martial.

**COUNT FOUR –**
**DESIGN AND MANUFACTURING DEFECT**
**[Wash. Rev. Code Section 7.72.010(2), (4), and .030]**

32.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully stated herein.

33.    At the time DEFENDANTS manufactured, packaged, and promoted the Formula products sold to and consumed by JOANN LEDOUX, the products were not reasonably safe as designed.

COMPLAINT - 32

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

34.    The Formula Nootropic Supplement products were and are far more dangerous than the ordinary consumer would reasonably expect, considering relevant factors, such as the formula concocted by the DEFENDANTS, the procedures for production of the supplements, and the product's intrinsic nature, relative cost, severity of potential harm, the industry standards governing natural products, and the cost and feasibility of minimizing such risks.

35.    The products sold to JOANN LEDOUX were unreasonably dangerous beyond the expectations of the ordinary consumer and were unfit for their intended use.

36.    At the time and on the occasions in question, JOANN LEDOUX was using the DEFENDANTS' products for the foreseeable purposes that DEFENDANTS' knew of and intended, and was in this respect defective, unsafe, and unreasonably dangerous.

37.    As a direct and proximate result of the defects in the DEFENDANTS' Formula Nootropic Supplement products, Plaintiff suffered the injuries as described above.

**COUNT FIVE – ALL DEFENDANTS – BREACH OF WARRANTY**
**[Wash. Rev. Code Section 7.72.010(4), .030(2)(b) and .040(1)]**

38.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully stated herein.

39.    DEFENDANTS all expressly and impliedly warranted that their products were reasonably fit for their intended purposes of human consumption, improving health and well-being, and as a safe and effective product for medical purposes such as alleviating a lack of energy, concentration, motivation, clarity, and focus.

40.    DEFENDANTS issued these warranties to develop and promote the sale of their products through their respective chains of distribution and retailing, ultimately resulting in the sales to JOANN LEDOUX.

COMPLAINT - 33

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

41.    As a Washington resident and employee, JOANN LEDOUX was a reasonably foreseeable end user of the product and was a third-party beneficiary of all warranties made and passed along by the DEFENDANTS through the chain of distribution to the end users.

42.    The DEFENDANTS' warranties regarding the product related to material facts regarding the safety and efficacy of their Formula Nootropic Supplements.

43.    The DEFENDANTS' warranties, including the warranties that the products were lawfully on the shelf, safe, and all-natural, were part of the basis of the bargain for JOANN LEDOUX's purchases of the products.

44.    The DEFENDANTS' warranties were untrue; the DEFENDANTS' products did not conform to the representations that were made.

45.    As a direct and proximate result of the breach of the DEFENDANTS' warranties regarding the products, Plaintiff suffered the injuries described above.

**COUNT FOUR – ALL DEFENDANTS – MISREPRESENTATION and FRAUD**
**[Wash. Rev. Code Section 7.72.010(4) and .040(1)]**

46.    Plaintiffs re-allege and incorporate by reference the paragraphs above as if fully stated herein.

47.    As stated above, DEFENDANTS made misrepresentations of material facts about the Formula Nootropic Supplement product and intentionally concealed information about the product from Plaintiff during the time JOANN LEDOUX bought and used the product.

48.    DEFENDANTS possessed superior knowledge about the lack of clinical testing and safety of its products, including the lack of reliable support for representations about the asserted clinical and medicinal safety of the product, and the absence of Controlled Substances caused by their Formula Nootropic Supplement products.

COMPLAINT - 34

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

49.    DEFENDANTS failed in their duty to disclose known material facts to Plaintiff regarding their products, including but not limited to:

    a.  That they contained pharmaceuticals or may contain pharmaceuticals.
    b.  That they contain new dietary ingredients.
    c.  That they contain substances that are classified as controlled drugs in countries outside the U.S.

50.    Additional misrepresentations and concealment included, but were not limited to:

    a.  Falsely representing that the product was a natural and safe alternative to prescription Adderall®.
    b.  Falsely representing that the product contains only the highest quality ingredients, rigorously tested for purity.
    c.  Falsely representing that the product contains only ingredients sourced in the USA.
    d.  Falsely representing that the product contains substances that are the most potent and well-studied nootropics on the market.
    e.  Falsely representing that the effects of the products were backed by studies.
    f.  Falsely representing that the products were individually tailored to the consumer.
    g.  Falsely representing that the product is safe and appropriate for regular human consumption.
    h.  Falsely representing that the product is never adulterated.
    i.  Falsely representing that the product has no serious adverse health effects.

51.    The above representations and omissions were material and were made with the intent to persuade and induce JOANN LEDOUX to choose and regularly use the product.

52.    DEFENDANTS made the above representations or omissions knowing the misrepresentations were false or were ignorant of the truth of the assertions.

53.    The above representations and omissions are reflected in DEFENDANTS' system for marketing its product.  Together, all these DEFENDANTS unlawfully promoted and held out for sale the unreasonably dangerous product to Washington Residents.

54.    DEFENDANTS made the above misrepresentations or omissions with the intention and knowledge that Washington consumers would select the product for regular

COMPLAINT - 35

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

consumption for the purposes identified in their marketing.

55.    JOANN LEDOUX relied upon and was induced to act in reliance on these DEFENDANTS' misrepresentations and omissions when she in fact purchased the product to achieve relief from a lack of energy, motivation, clarity, and focus.

56.    As a direct and proximate result of the breach of the warranties regarding the product, Plaintiffs suffered injuries as described above.

## VI.    PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, JOANN LEDOUX, by and through and on behalf of all her beneficiaries, respectfully requests a jury be impaneled to hear this case, and for judgment against the Defendants:

(a)    Awarding general and special damages in an amount to be proven at trial;

(b)    Awarding injunctive relief pursuant to Chapter 19.86 RCW;

(c)    Awarding reasonable attorney's fees and costs, including attorney's fees pursuant to Chapter 19.86 RCW;

(d)    Awarding punitive damages to the full extent allowed by applicable law, in light of the principles and policies of Chapter 19.86 RCW and/or the substantive laws of New York regarding punitive damages;

(e)    Because the Defendants' acts and omissions as set forth for the claims of Fraud, Failure to Warn, and Warranty were reckless and/or wanton, demonstrating a conscious disregard of the rights of others, and justify an award of punitive damages; and

(f)    Awarding such other relief as the Court deems just and proper under the

COMPLAINT - 36

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940

circumstances of this case, including injunctive relief under Chapter 19.86 RCW prohibiting the distribution of supplements into Washington.

DATED this _____ day of September, 2024.

ATTORNEYS FOR PLAINTIFFS

  s/ Jocelyn C. Stewart_____
**Jocelyn C. Stewart** WSBA No. 58100
**Law Office of Jocelyn C Stewart, Corp.**
1200 Pacific Ave. # 600
Tacoma, WA 98402
Phone: (253) 212-6940
Email: jocelyn@ucmj-defender.com
Email: megan@ucmj-defender.com

  s/ Talis M. Abolins_____
**Talis M. Abolins** WSBA No. 21222
**Michael J. Cowgill** WSBA No. 55303
**mctlaw**
1325 4th Ave. # 1730
Seattle, WA 98101
Phone: (206) 487-7371
Email: tabolins@mctlawyers.com
Email: mcowgill@mctlawyers.com

COMPLAINT - 37

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (252) 212-6940