UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANN LEDOUX,<br><br>        Plaintiff,<br><br>   v.<br><br>OUTLIERS, INC. (d/b/a THESIS, THESIS NOOTRPICS, FIND MY FORMULA, and FORMULA), a Delaware Corporation; DANIEL FREED, individually; MATT RUBIN, individually; BRAND NUTRACEUTICALS, INC. (d/b/a BRAND NUTRA), a New York Corporation; BRAND PACKAGING GROUP, INC. (d/b/a BRAND NUTRACEUTICALS), a New York Corporation; and John and Jane Does 1-5,<br><br>        Defendants. | Case No. 3:24-cv-05808-TMC<br><br>ORDER ON PARTIAL MOTION TO DISMISS |

Before the Court is a partial motion to dismiss filed by Outliers, Inc. ("Thesis"), Daniel Freed, and Matt Rubin. Dkt. 57. For the reasons discussed in this order, the Court GRANTS IN PART and DENIES IN PART the motion. The Court dismisses all claims against Freed and Rubin without prejudice.

## I.    BACKGROUND

As the Court previously summarized, Plaintiff's amended complaint alleges that:

Between March and September 2021, Plaintiff Joann LeDoux, a nurse in a military hospital, purchased nootropic supplement kits from Defendant Outliers, Inc. (doing business as Thesis or Thesis Nootropics). The company promised that the supplements supported cognitive function, claiming they were a natural alternative to stimulant-based medications like Adderall. But LeDoux alleges that the products actually contained amphetamines, a class of stimulants, and other ingredients that Thesis failed to disclose. When LeDoux was subject to a routine drug screening by the military, she tested positive for amphetamines. She alleges that the Thesis supplements are the probable source. Because of the positive drug screen, LeDoux was ultimately removed from her position. She lost access to her military benefits

and both her mental and physical health deteriorated. And, after discontinuing the supplements, she claims she suffered severe withdrawal symptoms from the amphetamines and other undisclosed ingredients.

LeDoux sued Defendant Thesis, as well its corporate leadership, Defendants Daniel Freed and Matthew Rubin. Dkt. 1. She also sued the companies Thesis partnered with to manufacture and package their product—Defendants Nutraceuticals and Brand Packaging Group. *Id.* Defendants moved to dismiss, and the Court partially granted the motion, providing LeDoux leave to amend. Dkt. 39. LeDoux filed an amended complaint. Dkt. 45. She brings claims under Washington common law, the Washington Consumer Protection Act (CPA), and the Washington Product Liability Act (WPLA) for 1) negligence; 2) unfair trade practices; 3) failure to warn; 4) design and manufacturing defect; 5) breach of warranty; and 6) misrepresentation and fraud. *Id.*

Dkt. 92 at 1–2.

Thesis Defendants brought the present motion under Fed. R. Civ. P. 12(b)(6), arguing that (1) Plaintiff fails to plausibly allege any claims against Freed and Rubin; (2) Count II alleges personal injury, rather than the injury to property required under Washington law; and (3) Count VI relies on a theory of fraud excluded by Washington law. Dkt. 57 at 1–2.[1]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation

---

[1] Defendants initially argued the case should be dismissed for lack of personal jurisdiction under Rule 12(b)(2), but they withdrew this argument on July 25, 2025, so that Freed and Rubin could "have this case decided on the merits expeditiously to avoid litigation costs that may exceed the amount in controversy." Dkt. 109. Defendants also argued that there was no statutory basis for punitive damages but withdrew this argument in their reply after the Court declined to address similar arguments by other Defendants at the pleading stage. *See* Dkt. 136 at 1, n.1; Dkt. 92 at 9–13.

omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014), but need not "accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, in a case alleging the same claims against multiple defendants, there must be specific allegations explaining what each defendant allegedly did wrong, rather than general allegations asserted against them as a group. *Trusov v. Oregon Health & Sci. Univ.*, No. 3:23-CV-77-SI, 2023 WL 6147251, at *2 (D. Or. Sept. 20, 2023); *see Evans v. Sherman*, 2020 WL 1923176, at *3 (E.D. Cal. Apr. 21, 2020) (noting that a plaintiff who "simply lumps all defendants together" makes it "impossible for the Court to draw the necessary connection between the actions or omissions" of the various defendants); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant

took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." (internal quotation marks and citation omitted)); *Wright v. City of Santa Cruz*, No. 13–cv–01230–BLF, 2014 WL 5830318, at \*5 (N.D. Cal. Nov. 10, 2014) ("These allegations are inadequate because they lump all defendants together and fail to allege the factual basis for each defendant's liability.").

## III.    DISCUSSION

Plaintiff asserts WPLA claims in Counts I, III, IV, V, and VI, and a CPA claim in Count II. Dkt. 45 ¶¶ 144–97. To start, Defendants argue that all claims against Freed and Rubin fail because Plaintiff has not alleged facts connecting either individual to any claim. Dkt. 57 at 8–9.

## A.    Claims Against Freed

Defendants argue that claims against Freed fail because Plaintiff has not plausibly alleged he was "directly and personally responsible for the design, manufacture, and distribution" of "the Formula," a collection of nootropics supplements Plaintiff purchased from Thesis. Dkt. 57 at 6. This Court agrees.

Officers can be liable for a corporation's torts when they participate in the wrongful conduct or with knowledge approve of the conduct. *R.N. v. Kiwanis Int'l*, 19 Wash. App. 2d 389, 409–10, 496 P.3d 748, 760 (2021) (citation modified). A corporate officer can be held personally liable when he is sufficiently involved in the commission of the tort. *Id.* "A predicate to liability is finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer, and the officer breached the duty of care by his own conduct." *Id.* at 413 (citation modified). Whether an officer's involvement in unlawful conduct was sufficiently personal and knowing is "a question of degree." *Taie v. Ten Bridges LLC*, No. C21-0526-JCC, 2022 WL 843586, at \*2 (W.D. Wash. Mar. 22, 2022) (quoting *Parkinson v. Freedom Fid. Mgmt., Inc.*, 2012 WL 1931233, slip op. at 12 (E.D. Wash. 2012)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff alleges that Freed is the CEO and co-founder of Thesis and "a formulator of the Formula products at issue." Dkt. 45 ¶ 3. And as Plaintiff points out, "the pleading elsewhere incorporates allegations concerning the inclusion of amphetamines, New Dietary Ingredients (NDIs), unlawful formulation practices, and misrepresentations or omissions in labeling, marketing, and warnings — all of which directly implicate the role of a formulator." Dkt. 128 at 15.

Despite her claims hinging on Freed's role as a "formulator," nowhere in the complaint does Plaintiff allege specific facts describing Freed's involvement in the Formula's design or chemical makeup. Nor does Plaintiff explain—even in very broad terms—what Freed's role as CEO entailed or how it encompassed the work of a "formulator." Plaintiff's allegations of control based on Freed's position are conclusory.

Without more, these allegations do not establish Freed's personal involvement in Thesis's alleged misconduct. *Fasugbe v. Willms*, No. CIV. 2:10-2320 WBS, 2011 WL 3667440, at *3 (E.D. Cal. Aug. 22, 2011) (rejecting claim that CEO was "a 'guiding spirit' and 'central figure' and made all final decisions" as conclusory); *Chloe SAS v. Sawabeh Info. Servs. Co*, No. CV 11-04147 GAF MANX, 2012 WL 7679386, at *21 (C.D. Cal. May 3, 2012) ("Plaintiffs' FAC alleges, in conclusory fashion, that, as owners and executive officers of SISCOM and TradeKey, Abalkhail and Mansoor 'operate' the accused web sites, 'directed, participated, authorized, encouraged, and/or aided the offering of counterfeit goods,' and receive a 'direct financial interest' from such activities"); *MFG Universe Corp. v. Next Gen LED, Inc.*, No. C21-0742-JCC, 2022 WL 9372343, at *2 (W.D. Wash. Oct. 14, 2022) (finding insufficient allegation that officers are in a position to know of misconduct, and do something about it, but fail to act).

1    The Court therefore GRANTS Defendants' motion to dismiss all claims against Freed.[2]

2    **B.**    **Claims Against Rubin**

3    Plaintiff alleges that Rubin was the Head of Supply Chain for Thesis and that, when he

4    testified at Plaintiff's court martial, he "provided false order history records" that denied Plaintiff

5    received all the nootropic supplements she ordered. Dkt. 45 ¶¶ 4, 121. When Rubin was pressed

6    and when he learned that Plaintiff retained order numbers and boxes of the supplement products,

7    he provided an accurate order history. *Id*. ¶ 121.

8    Plaintiff's claims against Rubin suffer the same shortcomings as those against Freed.

9    Plaintiff does not explain how Rubin's role as supply chain head would make him sufficiently

10    involved in Thesis's alleged misconduct. Plaintiff does not allege facts to show how Rubin was

11    responsible for designing, manufacturing, promoting, selling, or labelling the nootropic

12    supplements at issue.

13    Plaintiff argues Rubin "knew or should have known about the inclusion of prohibited

14    NDIs and the absence of appropriate warnings, and that his conduct was a substantial factor in

15    the distribution of the adulterated products to the consumer." Dkt. 128 at 12. But Plaintiff's

16    complaint does not include facts from which one can infer *how* Rubin would have known about

17    these things. For example, Plaintiff does not allege Rubin ever reviewed, discussed, or advised

18    changes to product labels. Nor does Plaintiff allege that Rubin ever provided input on the

19    chemical makeup of the Formula. Additionally, as Defendants point out, Plaintiff alleges the

20    same claims against Rubin and Freed based on their positions—despite them having different

21

22    ───────────────

23    [2] In a previous order, the Court concluded that Plaintiff "sufficiently pled a claim of fraud or misrepresentation against the Thesis Defendants." Dkt. 39 at 32. That order did not address the sufficiency of allegations against the individual Defendants, and the Court finds that the plausibility of claims against Thesis does not extend to the barebones claims against Freed and Rubin.

24

roles at the company. Dkt. 57 at 9. Finally, Plaintiff provides no details on Rubin's court martial testimony or the "false order history records" from which the Court could infer that Rubin knew about the records' falsity. Nor does Plaintiff connect the factual allegations about Rubin's role in her court martial proceeding to the legal theories alleged in her complaint.

The Court therefore GRANTS Defendants' motion to dismiss all claims against Rubin.

## C.    Count II: Unfair Trade Practices

Thesis Defendants argue the Court should dismiss the CPA claims in Count II because the CPA does not encompass "personal injury" claims like Plaintiff's. Dkt. 57 at 9–11. Plaintiff responds that her damages include "economic loss from overpayment or loss of the benefit of the bargain" which is not inextricably linked to her physical and emotional injuries from consuming the supplements. Dkt. 128 at 23–28.

The Court previously determined that Plaintiff plausibly alleged an economic injury for the purposes of subject matter jurisdiction because she would not have purchased the supplements had she known that they contained amphetamines. Dkt. 92 at 8–9. As Defendants point out, however, an injury that satisfies the Article III standard for standing may not necessarily be compensable under the CPA. Dkt. 136 at 7–8.

Defendants argue that Plaintiff's claims are defined by her personal injury rather than any economic loss. Dkt. 136 at 5–7. Defendants cite diverging Washington state court doctrines addressing when plaintiffs can simultaneously plead personal injury and CPA claims.

In *Scott v. Amazon.com, Inc.*, for example, the Court of Appeals held that a plaintiff may not "frame the issue as a mere attempt to recover the purchase price" if a "CPA claim is premised on the same factual allegations [. . .] that form the basis of their causes of action brought under the WPLA." 33 Wn. App. 2d 44, 73, 559 P.3d 528 (2024), *review granted*, 566 P.3d 90 (2025); *see also Ambach v. French*, 167 Wn.2d 167, 178, 216 P.3d 405 (2009) ("While

Ambach's payment for her surgery may look on its face like the purchase of a good or service envisioned by the CPA, her actual damages demonstrate that what she really seeks is redress for her personal injuries, not injury to her business or property").

Yet in other cases, the Washington Court of Appeals has relied on the entrepreneurial motive test to conclude that the cost of a medical procedure (or in this case, a supplement) can be a consumer injury if "the marketing . . . is deceptive and entrepreneurial, . . . even if the plaintiff has alleged the same procedure caused personal injury." *Williams v. Lifestyle Lift Holdings, Inc.*, 175 Wn. App. 62, 64, 302 P.3d 523 (2013). This test permits CPA claims relating to the entrepreneurial aspects of medicine, such as advertising, marketing, sales, billing, and obtaining and retaining patients. *See id.* at 72; *see also Young v. Savidge*, 155 Wn. App. 806, 826, 230 P.3d 222 (2010). The rule prohibits CPA claims that are unrelated to these entrepreneurial aspects— such as the "substantive quality of services provided" or "the skill and competence" of a medical practitioner. *Young*, 155 Wn. App. at 826, n.15; *Williams*, 175 Wn. App. at 72.

Defendants acknowledge that this issue is currently before the Washington Supreme Court in *Scott*, 566 P.3d 90, but they insist Plaintiff's claims fail under either test. Dkt. 136 at 6–7. To the contrary, the Court concludes the claims survive both standards.

"[T]he business and property injuries compensable under the CPA are relatively expansive." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014). In *Ambach*, the Washington Supreme Court concluded that the plaintiff's increased costs from undergoing surgery rather than more conservative medical treatment were part of her personal injury damages, not an injury to business or property. 167 Wn.2d at 174. But the Court recognized that the "cost of a product acquired due to fraud or deception" is "a traditional CPA claim." *Id.* (citation modified). And in a concurring opinion, Justice Chambers emphasized that a previous case "upholding a CPA claim based on the advertising, marketing, and sale of diet

drugs" remained good law. *Id.* at 180 (citing *Wright v. Jeckle*, 104 Wn. App. 478, 479–80, 16 P.3d 1268 (2001)). In *Wright*, the Court of Appeals allowed a CPA class action to go forward seeking to recover the money a doctor "received from the sale of fen-phen" after advertising it as "safe." 104 Wn. App. at 480–81.

Here, Plaintiff's CPA claim alleges that Thesis promoted and sold its nootropics without disclosing their true ingredients; mispresented that its products were tested for purity; falsely advertised the sourcing of its ingredients; and falsely advertised that the products were safe, unadulterated, and fit for regular human consumptions. *See* Dkt. 45 ¶ 152. She then alleges that Defendants' misconduct caused her injury by "forcing [Plaintiff] to *incur substantial expenditures on a product* that instead of being safe and effective, was the cause of her positive urinalysis for Amphetamines, leading directly to the infliction of staggering emotional and financial losses associated with a court-martial by her employer." Dkt. 45 ¶ 156 (emphasis added). In other words, Plaintiff's economic harm from *buying* a mislabeled and falsely advertised product is an economic injury separate from any injury caused by *ingesting* that product. The former does not, as Defendants argue, "flow from a personal injury." Dkt. 136 at 7 (citing *Frias*, 334 P.3d at 538). And to the extent it is considered analogous to claims implicating the practice of medicine (which seems unlikely for the online purchase of over-the-counter supplements), Plaintiff's CPA claim plainly arises from allegations of "deceptive and entrepreneurial" marketing. *Williams*, 175 Wn. App. at 64. Rather than *Ambach*, the most analogous precedent for Plaintiff's claim is *Wright*—based on the marketing and sale of diet drugs—which the *Ambach* concurrence emphasized remains good law.

Comparing this case with *Scott* leads to the same result. In *Scott*, the estates of four individuals sued after those individuals purchased sodium nitrite from the defendant for the purpose of dying by suicide and ingested it for that purpose. 559 P.3d at 533–35. Unlike here,

1    there was no allegation the deceased individuals would not have purchased the product if they

2    had known about its dangers. *See* Dkt. 45 at 85–90 (Plaintiff "decided to purchase a

3    subscription" to Formula packets in reliance on Thesis's representations as a "safe, all-natural,

4    better alternative to Adderall") (citation modified). Rather, the parties in *Scott* advanced a CPA

5    claim on the same premise as their WPLA claim: that the defendant "promot[ed] and aid[ed]" the

6    deceased's suicides. *Scott*, 559 P.3d at 535.

7        That some factual overlap exists between Plaintiff's WPLA and CPA claims does not

8    doom the latter. Plaintiff's CPA claims are based not on her personal injury from ingesting

9    Thesis's supplements, but rather on the money she spent purchasing them in reliance on Thesis's

10   allegedly false and misleading advertising. The Court therefore DENIES Defendants' motion

11   with respect to Count II.

12       **D.    Count VI: Misrepresentation and Fraud**

13       Finally, Defendants argue Count VI should be dismissed because the WPLA does not

14   provide relief for claims of fraud and, if Plaintiff "intends to bring a common-law claim for fraud

15   in addition to a WPLA claim for misrepresentation, she must do so in a separate count." Dkt. 57

16   at 11 (citing *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840–41 (9th Cir. 2000)). Defendants

17   maintain that the pleading format is so vague they cannot "ascertain which causes of action are

18   asserted against them or respond accordingly." *Id*.

19       Plaintiff argues that she pleads these claims in the alternative. Dkt. 128 at 30 (Defendants

20   "knew the representations were false [. . .] or were ignorant of the truth of the assertions")

21   (quoting Dkt. 45 ¶ 193). Plaintiff cites Fed. R. Civ. P. 8(d)(2), which permits a party to "set out

22   two or more statements of a claim or defense alternatively or hypothetically, either in a single

23   count [. . .] or in separate ones." *Id*.

24

ORDER ON PARTIAL MOTION TO DISMISS - 10

The Court has reviewed Count VI and agrees with Plaintiff that it satisfies the pleading standards in Rule 8. Defendants, having omitted any argument on this issue in their Reply, appear to agree. *See generally* Dkt. 136. The Court therefore DENIES Defendants' motion with respect to Count VI.

## IV.    CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' partial motion to dismiss. Dkt. 57. The Court dismisses all claims against Daniel Freed and Matt Rubin without prejudice.

Dated this 28th day of October, 2025.

Tiffany M. Cartwright
United States District Judge