UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANN LEDOUX, a single woman, | Case No. 3:24-cv-05808-TMC |
| Plaintiff, | ORDER ON MOTIONS TO SEAL |
| v. | |
| OUTLIERS, INC. (d/b/a THESIS, THESIS NOOTROPICS, FIND MY FORMULA, and FORMULA), a Delaware Corporation; DANIEL FREED, individually; MATT RUBIN, individually; BRAND NUTRACEUTICALS, INC. (d/b/a BRAND NUTRA), a New York Corporation; BRAND PACKAGING GRO. | |
| Defendants. | |

Before the Court is a motion by Defendants Thesis, Daniel Freed, and Matt Rubin[1] to seal exhibits containing Freed's personal notes (the "Standup" document) and Plaintiff's provisional motion to seal the transcript of Freed's deposition. Dkts. 140, 165.

For the reasons set forth below, the Court GRANTS Defendants' motion to seal (Dkt. 140). The Court DENIES Plaintiff's motion to seal (Dkt. 165) as MOOT. The Clerk shall

---

[1] Freed is the CEO of Thesis and Rubin is the company's Director of Supply Chain. Dkt. 45 ¶¶ 3–4. The Court dismissed all claims against Freed and Rubin without prejudice on October 28, 2025. Dkt. 169. Plaintiff requested leave to amend her complaint to cure deficiencies relating to these defendants on November 13, 2025. Dkt. 173.

ORDER ON MOTIONS TO SEAL - 1

STRIKE Exhibit 62 (Dkt. 166) from the record. The Court ORDERS Plaintiff to re-file any portions of the Freed deposition transcript that are relevant to her summary judgment response by December 8, 2025. Before doing so, the parties are ORDERED to meet and confer to determine whether those portions must be provisionally filed under seal.

## I.    BACKGROUND

This case involves product liability claims brought by Plaintiff Joann LeDoux, a nurse in a military hospital, who purchased nootropic supplement kits from Defendant Outliers, Inc. (doing business as Thesis or Thesis Nootropics). Ledoux alleges that Thesis failed to disclose that their supplements contained amphetamines, resulting in LeDoux testing positive for amphetamines when subjected to routine drug screening by the military.

Defendants seek to seal exhibits they attached to a joint discovery statement outlining the parties' dispute over Plaintiff's proposed Rule 30(b)(6) deposition of Recoop LLC. Dkts. 140, 141. Exhibits 1–4 are versions of the Standup document, Exhibits 5–7 are "derivative materials that divulge the contents of the Standup document," and Exhibit 8 contains Thesis's discovery responses, which it maintains "discuss trade secrets such as the sourcing of ingredients and purity testing processes." Dkt. 140 at 1.

After founding Thesis in January 2017 (then Outliers, Inc.), Freed co-founded Recoop with Anastasia Alt in July 2018. Dkt. 141-1 at 84, 101–102. Freed remained a manager and shareholder of Recoop from 2018 until February 2020. *Id*. at 84. Alt, the majority shareholder of Recoop, separately acted as an advisor to Thesis and owned shares in the company until March 9, 2021. *Id*. at 85, 101. Neither Alt nor Recoop are parties to this litigation.

The relationship between Alt and Freed soured, and in March 2024, Recoop filed a trade secrets lawsuit against Thesis in the Southern District of New York. *Id*. at 85–86, 102; *see Recoop LLC v. Outliers Inc.*, No. 1:24-cv-01810-LJL (S.D.N.Y. 2024). Alt claims she

discovered the Standup document in 2023, while Recoop was researching allegations of "marketing data misappropriation" that would form the basis for that suit. Dkt. 141-1 at 87.

According to Alt, Freed created the Standup document in February 2018 and, in August 2018, changed the access settings of the Google Docs web link so "[a]nyone on the internet with the link" could edit and download it. *Id*. at 88. In January 2020, Freed navigated to the Standup document in his web browser while logged into biz@getrecoop.com—Recoop's "primary business account for marketing data and analytics." *Id*. at 87–89. In doing so, Freed provided that account with the link to the Standup document and caused it to appear in the "Recent" section of Google Drive, where Recoop found it in 2023. *Id*. After Alt learned of the present litigation in February 2025, Recoop provided Plaintiff's attorney with a copy of the Standup document. *Id*. at 89–90.

The Standup document contains roughly 70 pages of Freed's personal notes, many of which concern Thesis's business practices and appear relevant to LeDoux's allegations. Dkt. 142 at 7–72. The document includes various reminders, draft emails, website links, passwords, and scattered notes that are sometimes indecipherable without further context. *Id*. at 35–42. Defendants contend that the document contains sensitive information like "financials, employee evaluations, customer data, login credentials, business relationships, and strategic plans, among other things." Dkt. 140 at 2.

## II. PROCEDURAL HISTORY

Despite having already obtained the Standup document from Alt on March 8, 2025, Dkt. 141-1 at 90, Plaintiff also subpoenaed Recoop for the document on March 19, 2025. Dkt. 152 at 52. Thesis opposed the subpoena and, on April 1, 2025, asked this Court to quash it and stay discovery to resolve the then-pending motion to compel arbitration. Dkt. 73. The Court granted a partial stay permitting only limited discovery, quashed the subpoena as outside the

ORDER ON MOTIONS TO SEAL - 3

scope of that limit, and directed the parties "to meet and confer on a stipulated protective order governing the use of the '_Standup' document already possessed by Plaintiff." Dkt. 78. Thesis withdrew its motion to compel arbitration less than a month later and the parties resumed discovery under a stipulated protective order granted May 19, 2025. Dkts. 86–94.

The Standup debate resurfaced on September 23, 2025, when Defendants (1) moved for a protective order preventing the Rule 30(b)(6) deposition of Recoop and (2) asked the Court to seal all versions of the Standup document, which Defendants attached to the parties' joint letter outlining their dispute. Dkts. 140–142. Plaintiff asked the Court to compel discovery of the native Google Docs version of the Standup document. Dkt. 141 at 8.

After hearing oral argument on September 30, 2025, the Court allowed the Recoop deposition to proceed and denied Plaintiff's request for the native Standup document. Dkt. 148. The Court deferred ruling on Defendants' motion to seal. *Id*. Plaintiff responded to the motion on October 9, 2025. Dkts. 154.[2] Defendants replied on October 14, 2025. Dkt. 157.

### III.   LEGAL STANDARD

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 602 (1978). The party seeking to keep documents filed under seal must satisfy the "good cause" or "compelling interest" standard. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016). "Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). In contrast, a "'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Id*.

---

[2] Plaintiff docketed her responsive brief as a praecipe on October 9, 2025. Dkt. 154. Her "response," filed the day before, contains only the exhibits thereto. Dkt. 152.

ORDER ON MOTIONS TO SEAL - 4

Further, this district's Local Civil Rules require a motion to seal include "[a] specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of (i) the legitimate private or public interests that warrant the relief sought; (ii) the injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not sufficient." W.D. Wash. Local Civ. R. 5(g)(3)(B). Local Civil Rule 5(g)(3)(A) also provides that a party who files a motion to seal must include in the motion a certification that they met and conferred with all other parties "on the need to file the document under seal, to minimize the amount of material filed under seal, and to explore redaction and other alternatives to filing under seal[.]"

## IV.     DISCUSSION

**A.     Defendants' motion to seal the Standup document (Dkt. 140)**

Defendants argue the Court should seal the Standup document because (1) it was attached to a non-dispositive joint stipulation and thus requires only a showing of good cause to seal; (2) it contains "sensitive, non-public, trade secret information" that "will tend to injure Freed and Thesis"; (3) failing to seal the Standup document would "gratify private spite" and "promote public scandal," given the strained relationship between Alt and Freed; (4) Alt was subject to a confidentiality agreement as part of her employment with Thesis when Freed inadvertently allowed her access to the document with the Recoop email address in 2020; and (5) Plaintiff improperly obtained the document "outside of the discovery process." Dkt. 140 at 4–6.

Aside from referencing a "trademark privilege," which doesn't seem applicable here, Plaintiff generally does not dispute that the Standup document contains information that could significantly harm Freed and Thesis if made public. *See* Dkt. 154 at 21–22. Rather, Plaintiff argues disclosure here is unlikely to cause the "competitive harm" that results from competitors copying something from the disclosing party "without investing their own resources to develop

ORDER ON MOTIONS TO SEAL - 5

it." *Id*. at 14 (quoting *FemtoMetrix Inc. v. Huang*, No. 8:22-CV-01624-JWH-KES, 2024 WL 3467799, at *3 (C.D. Cal. June 28, 2024), *reconsideration denied*, No. 8:22-CV-01624-JWH-KES, 2024 WL 3915136 (C.D. Cal. July 19, 2024)). But competitive harm can also result where, as here, disclosure would "reveal internal strategy and decision-making processes." *Jones v. PGA Tour, Inc.*, No. 22-CV-04486-BLF, 2023 WL 3594058, at *3 (N.D. Cal. May 22, 2023).

Plaintiff primarily argues the Standup document is *already* public, taking it out of the protective order's scope and weakening any argument that good cause exists to seal it. *See id*. at 15–16, 19–22. The Court disagrees and finds good cause to seal the Standup document.

According to Plaintiff, the Standup document is public because it "was available for anyone with a link" when Alt downloaded it. Dkt. 154 at 19. But Plaintiff does not contest Defendants' assertion that "a link-accessible document on Google Drive is not generally findable via an internet search engine or similar tool" and it is unlikely a given person could "simply guess the link to a given Google document." Dkt. 140 at 6.

Alt only obtained access to the Standup document because Freed opened it while logged into the Recoop email address. Dkt. 141-1 at 88–89. There is no indication Freed intended to share the Standup document with Recoop or Alt, or that he ever intentionally shared the document with anyone at all. Plaintiff provides no evidence that anyone but Freed and Alt—let alone the broader public—had access to the link.

Alt was also bound by a confidentiality agreement to not disclose any "business, technical, and financial information" she learned while serving as an advisor to Thesis. Dkt. 140 at 10. Even though Alt learned of the document through Freed's work with Recoop, rather than her advising at Thesis, the difference between the two roles is murky. *See* Dkt. 141-1 at 102 ("Alt did not object to, and in fact expressly consented to, [Freed's] simultaneous work for both companies, especially given her status as an investor in and advisor to Thesis where she directly

ORDER ON MOTIONS TO SEAL - 6

interacted with [Freed] as Thesis' CEO."). At minimum, the sensitive information in the Standup document likely overlaps with what Alt would have learned while advising Thesis. *See id.* ("[Alt] was privy to Thesis' internal systems and marketing strategy.").

In any event, the record demonstrates the Standup document was not intended to be shared publicly. The document mostly contains scattered notes and bullet points that would be difficult for a recipient to decipher without context. Dkt. 142 at 24–31. Freed's notes about his personal life are interspersed with insider information about the company's strategy, product development, personnel matters, marketing, and advertising. *See* Dkt. 142 at 34–35, 41–43.

The contents, format, and the way in which Recoop incidentally obtained access to the Standup document all point to "confidential product and business information which is not intended for public disclosure[.]" *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-BLF(JSC), 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015). Moreover, it is the very information the Court's protective order is designed to shield. *See* Dkt. 94 at 3 (confidential material includes "competitive or strategic information not readily ascertainable and for which the Designating Party has taken reasonable steps to maintain confidentiality."). Upon learning Plaintiff had a copy of the Standup document, Defendants promptly claimed it was confidential, attempted to claw it back, and asked the Court to prevent its public filing. Dkt. 141-1 at 2–3, 14; Dkt. 73. These steps further indicate the document is confidential and not publicly available.

And while it is technically true that anyone could access the Standup document if they somehow guessed the characters in the link, this would be akin to "rattling the handle . . . until the lock disengages." *Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1287 (D. Utah 2021) (discussing access "without authorization" under the Computer Fraud and Abuse Act).

The fact that the Standup document is "publicly available to anyone with the link" does not make it "publicly available" in the broader sense, as Plaintiff suggests. Dkt. 154 at 19.[3]

Plaintiff's remaining arguments similarly fail. For example, Plaintiff argues the Standup document is not "discovery material" subject to the protective order because it was obtained outside of discovery. Dkt. 154 at 10–11. But as Defendants note, the protective order also covers "copies" of documents produced during discovery and designated as confidential. Dkt. 140 at 10. Additionally, Plaintiff's argument ignores that the Court specifically asked the parties to draft a protective order "governing the use of the '_Standup' document *already possessed by Plaintiff*." Dkt. 78 at 2 (emphasis added). The resulting protective order clearly applies to the Standup document.

The Court finds good cause to seal the Standup document and GRANTS Defendants' motion. Dkt. 140.

**B.     Plaintiff's motion to seal Freed's deposition transcript (Dkt. 165)**

Plaintiff attached Exhibit 62, the transcript from the Freed deposition, in support of her response to Defendants' pending summary judgment motion. Dkt. 166. Because Defendants previously designated portions of the transcript as confidential under the Court's protective order, Plaintiff filed a motion to seal the exhibit. Dkt. 165 at 3; LCR 5(g)(3)(B). In doing so, however, Plaintiff failed to comply with LCR 10(e)(10), which requires that parties "submit only those excerpts of the referenced exhibits that are directly germane to the matter under consideration, or necessary to provide relevant context."

---

[3] That the link appears in a public training video also does not bring it into the public domain, as it appears only partially—leaving a curious viewer to guess the remaining characters in the link before accessing it. Dkt. 140 at 34.

ORDER ON MOTIONS TO SEAL - 8

Plaintiff cites the entire transcript in her brief to support her claims that (1) Freed admitted to three complaints by customers for positive drug tests; and (2) that Freed "has had access to Adderall with a prescription and without it." Dkt. 159 at 35 (citing Dkt. 166). Plaintiff does not contest Defendants' assertion that only 14 pages of testimony are relevant to these claims and that, aside from the name of a business partner on page 60, Defendants did not designate those pages as confidential. Dkt. 170 at 2; Dkt. 171 at 6. Although Plaintiff replies that her filing was correct because "the two rules operate in tandem," she offers "to submit a revised, excerpted version of the deposition transcript and exhibits provisionally under seal, limited to the pages and lines directly germane to the summary-judgment record." Dkt. 171 at 4, 6.

To reduce unnecessary motion practice, the Court clarifies the interaction between LCR 5(g) and LCR 10(e)(10) as follows:

- First, Plaintiff should determine what portions of a document are "directly germane" or "necessary to provide relevant context" to the arguments in her brief. LCR 10(e)(10).[4]

- Second, Plaintiff should determine whether Defendants have designated any of these portions as confidential under the Court's protective order, thus triggering LCR 5(g)(1)(A).

- Third, if any portions have been designated as confidential, the parties should meet and confer "in an attempt to reach agreement on the need to file the document under seal, to minimize the amount of material filed under seal, and to explore redaction and other alternatives to filing under seal." LCR 5(g)(3)(A).

---

[4] In future submissions, Plaintiff should also "cite the page and line of any part of the transcript or record to which [her] pleadings, motions or other filings refer." LCR 10(e)(6).

ORDER ON MOTIONS TO SEAL - 9

- Finally, if the parties cannot reach an agreement, Plaintiff should file the document provisionally under seal. LCR 5(g)(2)(B). If Plaintiff does not believe sealing the exhibit is warranted, she need only certify that she met and conferred with Defendants under LCR 5(g)(3)(A) and need not write a statement explaining the reasons for sealing pursuant to LCR 5(g)(3)(B).

Here, the parties seem to agree that relevant transcript pages contain some information Defendants designated as confidential—at minimum, "the name of a business partner on page 60." Dkt. 170 at 2. Plaintiff can therefore begin at step three.

Accordingly, Plaintiff shall re-file any portions of the Freed deposition transcript that are relevant to her summary judgment response. Before doing so, the parties shall meet and confer pursuant to LCR 5(g)(3)(A) to determine whether Plaintiff must provisionally file those portions under seal.

The Court DENIES Plaintiff's motion to seal (Dkt. 165) as MOOT. The Clerk shall STRIKE Exhibit 62 (Dkt. 166) from the record.

## V.   CONCLUSION

The Court GRANTS Defendants' motion to seal. Dkt. 140.

The Court DENIES Plaintiff's motion to seal as MOOT. Dkt. 165. The Clerk shall STRIKE Exhibit 62 (Dkt. 166) from the record. The Court ORDERS Plaintiff to re-file any portions of the Freed deposition transcript that are relevant to her summary judgment response by December 8, 2025. Before doing so, the parties are ORDERED to meet and confer to determine whether those portions must be provisionally filed under seal.

Dated this 1st day of December, 2025.

Tiffany M. Cartwright
United States District Judge