Honorable Judge Tiffany M. Cartwright

1

2

3

4

5

6                              IN THE U.S. DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
7                                        AT TACOMA

8    JOANN LEDOUX, a single woman.

9                          Plaintiff,            No. 3:24-cv-05808-TMC

10   vs.
                                                **PLAINTIFF'S RESPONSE TO THESIS'**
11   OUTLIERS, INC. (d/b/a THESIS, THESIS        **MOTION FOR PARTIAL SUMMARY**
     NOOTRPICS, FIND MY FORMULA, and             **JUDGMENT (NDIs and**
12   FORMULA), a Delaware Corporation;           **ADULTERATION) {WITH**
     DANIEL FREED, individually; MATT            **REFERENCES}**
13   RUBIN, individually; BRAND
     NUTRACEUTICALS, INC. (d/b/a BRAND
14   NUTRA), a New York Corporation; BRAND
     PACKAGING GROUP, INC. (d/b/a BRAND
15   NUTRACEUTICALS), a New York
     Corporation; and John and Jane Does 1-5.
16

17                          Defendants.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25

1

## TABLE OF CONTENTS

2
Page

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ v

I.   PRAYER FOR RELIEF  ...................................................................................... 1

II.  INTRODUCTION  ................................................................................................ 1

III. LEGAL STANDARD AND BURDEN OF PROOF.................................................. 3

IV. FACTS .................................................................................................................... 4

    A.   Background .................................................................................................. 4

    B.   Complaint .................................................................................................... 4

    C.   Claims ......................................................................................................... 4

        1.   Claim One: Negligence ........................................................................ 4

        2.   Clam Two: Unfair Trade Practices / Consumer Protection Act ............... 5

        3.   Claim Three: Failure to Warn ............................................................... 5

        4.   Claim Four: Design and Manufacturing Defect...................................... 5

        5.   Claim Five: Breach of Warranty ........................................................... 6

        6.   Claim Six: Fraud and Misrepresentation ............................................... 6

        7.   Conclusion of Facts.............................................................................. 6

    D.   Harm ........................................................................................................... 7

    E.   Damages...................................................................................................... 7

    F.   Intervening Act(s) ....................................................................................... 8

    G.   Causation.................................................................................................... 8

V.  ARGUMENT .......................................................................................................... 13

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – ii
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 212-6940

A. Defendants' Motion is Improper and Should be Denied ................................... 13

    1. Defendants Improperly Seek Evidentiary Rulings ................................. 13

    2. Defendants Did Not Seek Leave of the Court to Challenge the CPA Claim ........................................................................................... 13

B. Defendants Failed to meet Their Initial Burden; Their Motion Should be Denied 14

    1. Defendants Did Not Challenge Specific Claims .................................... 14

    2. Defendants' Motion Denied Plaintiff Due Process ................................ 15

    3. Defendants' Motion Does Not Provide Admissible Evidence ............... 16

C. Defendants' Motion Does Not Articulate Any Essential Element They Purport to Defeat ........................................................................................................... 17

D. Rule 56(g) Does Not Authorize Defendants' Impropery Standalone Evidentiary Motion ............................................................................................................ 19

E. Even if the Court Somehow Finds a Proper Motion for Partial Summary Judgment, Defendants' Motion Should be Denied – Their Motion Does Not Defeat Any Claim ............................................................................................................ 18

    1. Defendants' Motion Does Not Challenge Any Element of Count I (Negligence) .......................................................................................... 20

    2. Defendants' Motion Does not Challenge Any Element of Count II (Strict Liability – Design/Manufacture) .............................................................. 21

    3. Defendants' Motion Does Not Challenge Any Element of Count III (Strict Liability – Failure to Warn) ................................................................... 22

    4. Defendants' Motion Cannot Defeat Count IV (Breach of Warranty) ...... 23

    5. Defendants' Motion Cannot Defeat Count V (Fraud/Misrepresentation) 24

    6. Defendants' Motion Cannot Defeat Count VI (Consumer Protection / State Statutory Claim) .................................................................................... 25

    7. Conclusion of Elemental Section ......................................................... 26

F.    Even if the Court Somehow Finds a Proper Motion for Partial Summary Judgment, with Admissible Evidence, Defendants' Motion Should be Denied – Several Pieces of Evidence Defeat Defendants' Evidentiary Assertions ..................................... 27

    1.    Evidence of Amphetamine Exposure by Defendants' Product(s) ........... 27

    2.    Evidence that Positive Amphetamine Urinalysis Harmed Plaintiff ........ 29

G.    The Court Could *Sua Sponte* Grant Summary Judgment for Plaintiff ................ 29

VI.    RELIEF REQUEST ..................................................................................... 30

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – iv
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 212-6940

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                        <u>Page</u>

*Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) .......................................... 29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505,
      91 L.Ed.2d 202 (1986) ................................................................... 3, 21-22, 26

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996) ......................................... 3

*Barsness v. United States*, No. 2:23-cv-00427, at *5 (W.D. Wash. Aug. 14, 2025) .... 3, 15-16

*Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ............................................. 17

*Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) ......................... 16

*Canada*, 831 F.2d at 925 ......................................................................... 17

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) .......... 2, 14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2553, 91 L.Ed.2d 265 (1986) 3, 14, 26, 29

*Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) ............................... 29

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ...................................... 3

*GE v. Joiner*, 522 U.S. 136, 141, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997) ...................... 20

*Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ............. 29

*Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017) ........................................... 2, 14

*Katz v. Children's Hosp.*, 28 F.3d 1520, 1534 (9th Cir.1994) ................................... 14

*Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) ...................... 18

*Maffei v. N. Ins. Co.*, 12 F.3d 892, 897 (9th Cir. 1993) ....................................... 20

*Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ............................................... 15

*Matsuura v. E.I. du Pont de Nemours & Co.*, Civ. No. 00-00615 SOM-LEK, 2007
      WL 602204, at *2, 2007 U.S. Dist. LEXIS 11424, at *15 (D. Haw. Feb. 16, 2007) 13, 26

*Milliner v. Mutual Sec., Inc.*, No. 15-cv-03354 (N.D. Cal. Aug. 18, 2016) ......................... 18

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – v
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 212-6940

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1161 (D. Haw. 2009) ............. 13, 26

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,
      1102 (9th Cir. 2000) ............................................................................. 17

*Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) ................................. 4, 16-18

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645
      (9th Cir. 1981) ............................................................................... 16

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880
      (9th Cir. 2000) ............................................................................ 1, 13

*Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 U.S. Dist. LEXIS 17523,
      2015 WL 660214, at *1 (N.D. Cal. Feb. 12, 2015) ..................................... 16

*SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 558 (N.D.Ill.1984).......................... 13, 26

*Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) ........................................ 4

*Sullivan v. City of Marysville*, C13-0803, (WD of Washington, Feb. 5, 2014).................... 17

*Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 (9th Cir. 1993)................................... 17

*United States v. State of Oregon*, 769 F.2d 1410, 1414 n. 4 (9th Cir.1985).................... 1, 14

**Federal Rules**

Fed. R. Civ. P. 56(a) ....................................................................... 18

Fed. R. Civ. P. 56(c) ....................................................................... 3

Fed. R. Civ. P. 56(c)(4) .................................................................... 16

Fed. R. Civ. P. 56(e) ....................................................................... 17

Fed. R. Civ. P. 56(f) ....................................................................... 29

Fed. R. Civ. P. 56(6) ....................................................................... 18

Fed. R. of Evid. 901(b) ................................................................... 4, 16

Fed. R. of Evid. 902 ...................................................................... 4, 16

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – vi
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 212-6940

**Other Authority**

RCW 19.86.020 ................................................................................ 25

Restatement (Second) of Torts § 402A ........................................... 22

Restatement (Second) of Torts § 525 .............................................. 24

U.C.C. §§ 2-313, 2-314, 2-315 ....................................................... 23

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – vii
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 212-6940

1

2

## I.    PRAYER FOR RELIEF

3    COMES NOW the above-named plaintiff, by and through her attorney of record,

4    Jocelyn C. Stewart, of **Law Office of Jocelyn C Stewart, Corp**., and moves this Honorable

5    Court to deny Defendants' Motion for Partial Summary Judgment.

## II.    INTRODUCTION

6

7    The Court should immediately deny Defendants' Motion for Partial Summary

8    Judgment because their pleading does not offer an actual summary judgment motion. While

9    they style their motion as one for partial summary judgment, they are improperly seeking only

10    evidentiary rulings. Courts look at the substance of a motion and not how it is styled.

11    *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000)

12    (citing *United States v. State of Oregon*, 769 F.2d 1410, 1414 n. 4 (9th Cir.1985)). Defendants

13    seek partial summary judgment on three grounds: (1) Plaintiff's claims "to the extent" they

14    involve amphetamine adulteration; (2) Plaintiff's claims "to the extent" they involve the failed

15    urinalysis causing Plaintiff's failed promotion; and (3) Plaintiff's Consumer Protection

16    ("CPA") claim because it is "legally barred". But none of these present grounds for summary

17    judgment.

18

19    The first two grounds fail to seek summary judgment on any claim or a part of a claim.

20    Defendants fail to even list any claim or part of a claim in either their proposed order or in their

21    brief. Rather, they nakedly seek untethered evidentiary rulings, which are interlocutory in

22    nature and not subject to judgment.

23    The third request is equally flawed, as it is identical to Defendants' Rule 12(b)(6)

24    motion to dismiss Plaintiff's CPA claim, which this Court has previously denied. (Dkt. 92).

25

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 1
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

Merely labeling this recycled argument as a summary judgment motion does not transform its substance. Again, courts evaluate motions based on their substance, not their title or style.

If anything, this third request on the CPA claim is a motion for judgment on the pleadings because it only seeks to test the legal sufficiency of the claim. "Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). The new motion is thus identical to the prior motion and would be evaluated by the Court under that same standard with the same asserted facts and the same arguments.

This makes the motion an amended pleading (albeit with the only possible amendment being to transform it into a motion for judgment on the pleadings), which should require leave of the court before Defendants could refile. W.D. Wash. LCR 15 (2025) (requiring parties to seek leave before amending pleadings). But Defendants did not withdraw their prior motion to dismiss the CPA claim, and they did not seek leave of the court to refile this repackaged motion. Thus, Defendants' Motion for Summary Judgment on the CPA claim is not properly before the Court.

In sum, Defendants' Motion for Partial Summary Judgment is flatly improper and riddled with fatal flaws that warrant its swift denial. By failing to target specific claims or elements, neglecting to demonstrate the absence of material factual disputes, and improperly recycling prior arguments without leave, Defendants have not met their initial burden. Defendants not only bring a meritless motion but one that is emblematic of their pattern of vexatious litigation tactics.

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 2
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

## III.    <u>LEGAL STANDARD AND BURDEN OF PROOF</u>

The party bringing a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2553, 91 L.Ed.2d 265 (1986). When the nonmoving party has the burden at trial, the moving party must only point out to the court that there is an absence of evidence to support the opposing party's case. *Id* at 325, 106 S.Ct. 2548.

A party moving for summary judgment under Rule 56 "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id at* 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

Only when the moving party meets its burden that there is an absence of a genuine issue of material fact, the non-moving party must present specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Barsness v. United States*, No. 2:23-cv-00427, at *5 (W.D. Wash. Aug. 14, 2025), citing *Anderson v. Liberty Lobby, Inc., 477* U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) at 251-52.

The Court may not weigh the evidence or make credibility determinations. *Id.* at 248, 106 S.Ct. 91. The Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Parties may only submit evidence that could be presented in an admissible form

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 3
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

at trial. O*rr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). And the foundation must be made under the Federal Rules of Evidence 901(b) or 902. *Id.* at 73-74.

## IV.    FACTS

### A.    Background

Outliers, Inc. d/b/a Thesis, Thesis Nootropics, Find My Formula, and Formula, (hereafter "THESIS DEFENDANTS") sold a product to Plaintiff JOANN LEDOUX from their website for "Find My Formula" nootropic supplements (hereafter "Formula"). THESIS DEFENDANTS marketed and shipped the Formula product Plaintiff in 2021.

THESIS DEFENDANTS contracted with BRAND NUTRA DEFENDANTS to manufacture and package the Formula product.

Plaintiff seeks damages stemming from six counts of civil liability, ranging from negligence to products' liability and violations of Washington Consumer Protection laws.

### B.    Complaint

Plaintiff's Complaint raises several claims against THESIS DEFENDANTS over six different counts, and sufficient facts to support those cognizable legal theories. See *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). (Dkt. 92).

### C.    Claims

#### 1.    Claim One: Negligence

The Complaint alleges: "The DEFENDANTS were all negligent and careless in the sourcing, import, design, testing, manufacture, labeling, marketing, distribution, and/or sale of Formula Nootropic Supplement products" (Dkt. 45 ¶145), and Defendants failed in their duties

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 4
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

by distributing products "containing unapproved substances, including amphetamines and Adderall." (Dkt. 45 ¶148.)

### 2.    Claim Two: Unfair Trade Practices / Consumer Protection Act

The Complaint alleges Defendants wrongfully marketed, distributed, and sold defective products into Washington, and that their conduct violated the Washington Consumer Protection Act (Dkt. 45 ¶¶10–12, 95), and that Defendants engaged in unfair or deceptive acts by selling products "that were adulterated with controlled substances, including amphetamines." (Dkt. 45 ¶97).

### 3.    Claim Three: Failure to Warn

The Complaint alleges that "the DEFENDANTS in this case all failed to warn JOANN LEDOUX that THESIS' Formula Nootropic Supplement product is: (a) wrongfully distributed, marketed and sold for human consumption without the required premarket verification of safety; (b) contained ingredients and drugs obtained from outside the U.S.; (c) contained pharmaceuticals; and (d) caused dependence, addiction, and withdrawal in regular users" (Dkt. 45 ¶140), and Defendants failed to warn that the products could expose Plaintiff to "substances banned by the military, including amphetamines and Adderall." (Dkt. 45 ¶141).

### 4.    Claim Four: Design and Manufacturing Defect

The Complaint alleges that "at the time DEFENDANTS manufactured, packaged, and promoted the Formula products sold to and consumed by JOANN LEDOUX, the products were not reasonably safe as designed" and that they were "far more dangerous than the ordinary consumer would reasonably expect." (Dkt. 45 ¶¶173–174), and the design was defective because it allowed for the presence of "dangerous stimulants, including amphetamines." (Dkt. 45 ¶175).

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 5
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

5.      **Claim Five: Breach of Warranty**

The Complaint alleges that "DEFENDANTS all expressly and impliedly warranted that their products were reasonably fit for their intended purposes of human consumption, improving health and well-being, and as a safe and effective product for medical purposes such as alleviating a lack of energy, concentration, motivation, clarity, and focus." (Dkt. 45 ¶179), and these warranties were false because the products "contained unsafe and addictive substances, including amphetamines and Adderall." (Dkt. 45 ¶180).

6.      **Claim Six: Fraud and Misrepresentation**

The Complaint alleges that Defendants "made misrepresentations of material facts about the Formula Nootropic Supplement product and intentionally concealed information about the product from Plaintiff during the time JOANN LEDOUX bought and used the product" (Dkt. 45 ¶187), and Defendants concealed that the products were "adulterated with controlled substances, including amphetamines." (Dkt. 45 ¶188).

7.      **Conclusion of Facts**

Each of Plaintiff's claims is framed in terms of the sourcing, design, manufacture, marketing, labeling, distribution, and warranty of Defendants' products. While the Complaint does reference the presence of amphetamines in places, pharmaceuticals in others, and specifically references Adderall in one or more claims, those references appear as examples of Defendants' conduct, liability, and damages, rather than as a required element of any individual claim. The elements of negligence, product liability, consumer protection, warranty, and fraud all focus on Defendants' conduct and representations. No cause of action pled relies on amphetamines or Adderall as an essential element. Accordingly, Defendants' attempt to dismiss

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

claims "to the extent" they relate to amphetamines does not correspond to the actual structure of the pleaded claims.

### D.    **Harm**

As a result of ingesting the Defendants' supplement product, after a random Army-administered drug urinalysis test, Plaintiff LEDOUX tested positive for amphetamines without a prescription in direct violation of Army policy and the UCMJ. (Dkt. 45, ¶¶102-106). Several cascading effects followed that resulted in substantial harm to Plaintiff LeDoux, who was working as an Army Certified Registered Nurse Anesthetist (CRNA). (Dkt. 45, ¶¶9, 46-57).

### E.    **Damages**

While Plaintiff was under investigation and pending legal action by the Army following her positive urinalysis for amphetamines, she was administratively flagged and precluded from eligibility for promotion. The flag commenced on September 27, 2021 as designated on Major LeDoux's Officer Record Brief, Section I for "IL-DRUG ABUSE ADVERSE ACTION". (**Exhibits 1, 2, ~~and 3~~**).

As a result of being passed over for promotion (**Exhibit 4**), Plaintiff was required to be processed for involuntary separation. **Exhibit 5**. Owing to Plaintiff's positive performance record, Plaintiff was selected for "Selective Continuation" and was permitted to remain in service when she was expected to be separated in the spring of 2025. (**Exhibits 5, 9**). Plaintiff was issued separation orders (**Exhibit 6**), which were amended when Plaintiff requested to be extended until the end of her children's 2024-2025 school year (**Exhibit 7**), and the Army granted her request. and issued her a DD Form 214 for involuntary separation effective June 2025. (**Exhibit 8**).

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 7
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

F. **Intervening Act(s)**

Plaintiff's record went to the promotion board, and she was favorably selected for promotion in the spring of 2025. Seemingly as a result of the Army's contracting issues, Plaintiff was selected for promotion to Lieutenant Colonel, and the Army offered Plaintiff to request that her involuntary separation orders be withdrawn and try to stay in service. (**Exhibit 9**). Plaintiff remains in service after her DD 214 was rescinded (**Exhibit 10**) and her orders to leave the Army were cancelled. (**Exhibit 11**).

Plaintiff notified Defendants of the intervening events that remediate some of Plaintiff's actual damages. (**Exhibit 12**). (**Exhibit 13**). Plaintiff amended her initial disclosures to reflect these changes in her damages. (**Exhibit 14**). Plaintiff has continued to update Defendants, has amended several responses to discovery (**Exhibit 15**), and assured that Plaintiff would amend her expert report on financial damages (**Exhibits 12, 14, 15**), which she has.

G. **Causation**

In December 2021, Plaintiff faced one charge and one specification for wrongful use of amphetamines, a Schedule II controlled substance, at a general court-martial. (**Exhibit 16**).

During the prosecution's case, they established the chain of custody for Plaintiff's urine sample. (**Exhibit 17**). Witness testimony established the sample attributed to Plaintiff contained the required 30 ml or more of urine, as per the Department of Defense requirements. *See* **Exhibit 17**.

After the prosecution laid the foundation to enter into evidence for the urine sample attributed to Major LeDoux (**Exhibit 18**), the prosecution called Dr. Catherine Okano, the testifying expert from the Tripler lab where the sample was tested. (**Exhibit 19**). During Dr. Okano's testimony, she stated that when the sample was received by the lab, it had fewer than

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 8
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1    30 ml of urine in it, but there were no signs of leakage. (**Exhibit 20**). She testified about the

2    relevant, non-hearsay aspects of the litigation packet regarding Plaintiff's urine sample

3    (**Exhibit 21**) and suggested irregularity of fewer than 30 mls was attributable to eyeballing the

4    amount in the bottle.

5        On cross-examination, Dr. Okano admitted that although there had been an out-of-

6    sequence warning issued to the lab tech who handled Plaintiff's sample (**Exhibits 20, 27**, pg.

7    65), the correction was made by the machine, not the human. (**Exhibit 20**). During re-direct

8    examination, Dr. Okano stated that none of the other samples the tech handled tested positive

9    for amphetamines or any other drug. (**Exhibit 20**).

10       In response to notice of the defense of innocent ingestion (**Exhibit 22**), the prosecution

11   added Mr. Daniel Freed and Mr. Matthew Rubin to their final government witness list.

12   (**Exhibit 23**). Mr. Freed secured legal representation and attempted to quash his subpoena.

13   (**Exhibit 24**).

14       In response to that motion to quash, Major LeDoux's counsel filed a response, asserting

15   that any asserted trademark or common law privilege had been waived. (**Exhibit 25**).

16       Mr. Freed's attorney responded via email and provided additional documents for the

17   military judge's consideration. (**Exhibit 26**).

18       Major LeDoux's defense team became aware that the prosecutors had forwarded to Mr.

19   Freed all of the criminal defense's marked exhibits from her court-martial. This occurred

20   before Mr. Freed's testimony at the trial. Major LeDoux's defense team requested and received

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 9
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1    the email traffic demonstrating that Mr. Freed received all of the defense's exhibits. (**Exhibit

2    27**).[1]

3        Mr. Freed's motion to quash was unsuccessful, and the military judge compelled him to

4    testify (Exhibit 28, pg. 7, line 19), though the ruling preserved Mr. Freed's claim of trade secret

5    privilege, inter alia, about the sourcing of his ingredients (Exhibit 28, pg. 7, lines 27-29).

6        During her trial, Plaintiff put on a robust criminal defense, called several witnesses, and

7    entered multiple exhibits. (**Exhibit 27**). Plaintiff testified in her defense. (**Exhibit. 29**, pgs. 2-

8    68). Plaintiff also elicited that Major LeDoux had provided an affidavit to law enforcement on

9    October 25, 2021, detailing her ingestion of the FindMyFormula supplements with

10   photographs of the supplement packets, and invited law enforcement to collect and test them.

11   (**Exhibit 30**, pgs. 1-2, ¶¶ 5, 11). Major LeDoux's affidavit included as attachments photos of

12   some of the FindMyFormula supplement packets she had in her possession and a private lab

13   urine test result for which Major LeDoux had submitted a separate urine sample for what

14   appeared to test for the presence of all amphetamines. (**Exhibit 30**, pgs. 4-7).Amphetamines

15   are in a class of drugs known as stimulants. (**Exhibit 27**, pgs. 78-93). Amphetamines are

16   generally detectable in the urine for one and four days after ingestion. (**Exhibit 31; Exhibit 20,**

17   pg. 27, lines 1 - 12). Amphetamines, like any drug, can be detected after ingestion, whether the

18   ingestion was knowing and voluntary, or whether the ingestion occurred when it was

19   separately or surreptitiously included in another substance. (**Exhibit 20**, pg. 34, lines 1-9). The

20   Department of Defense cutoff level to detect amphetamines in a urinalysis is 500 ng/mL.

21   (**Exhibit 32**). Major LeDoux submitted a urine sample on August 16, 2021, after her

---

[1] Note: The copies the prosecution sent to Mr. Freed were erroneously marked and were later corrected by the court reporter. Plaintiff is using them in this filing, given that this is the version that Mr. Freed had.

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 10
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

commander directed a 100% collection for all members of his command. (**Exhibit 27**, pg. 3). Plaintiff's command received the results that her urine screen tested at 4997 ng/mL for "DAMP", which is translated on the form to be d-amphetamine. (**Exhibit 33**). Major LeDoux's commander attested that she was shocked when he notified her about the test results. (**Exhibit 27**, pg. 6; **Exhibit 34,** pg. 10, 15-17).

After receiving the report of the positive urinalysis, LTC Friedline counseled Major LeDoux in writing and directed that Major LeDoux meet with the medical review officer (MRO). (**Exhibit 27**, pgs. 4-5), (**Exhibit 47**).

When the Department of Defense urinalysis detects a controlled substance for which there could be a valid prescription, a medical review officer reviews the prescription history to determine if the test result is excusable. When the MRO conducted his initial screen on September 24, 2021, by reviewing Major LeDoux's prescription history, he noted that none of her prescriptions could account for her positive d-amphetamine result. (**Exhibit 27**, pg. 13). The MRO memorialized his September 30, 2021, meeting with Major LeDoux and noted she reported taking "a supplement belonging to a class of supplements that may contain amphetamines", but he also remarked that her report "would not be considered a valid medical explanation for this test result." (**Exhibit 27**, pg. 17). Dr. Daren Mealer, who served as MRO, testified under oath as to these matters. (**Exhibit 35**).

Despite Major LeDoux's request that law enforcement collect remaining supplements she had to test (**Exhibit 30**, pg. 2, ¶ 11), military law enforcement refused (**Exhibit 36**) based on advice they received from an inexperienced judge advocate attorney who erroneously believed that a certain nanogram level translated to knowing ingestion of amphetamines. (**Exhibit 37**; **Exhibit 27**, pg. 64; **Exhibit 38**).

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Military law enforcement did not speak with any witnesses or evidence that Major LeDoux had access to amphetamines. (**Exhibits 36, 39, 40**). The same investigator made a significant error in Major LeDoux's case file, recording that she had a prior criminal history for THC. (**Exhibit 27**, pgs. 40-41). He acknowledged the error in his court-martial testimony that his October 2021 error was not cured until May 2022 (**Exhibit 36**), even though the mistake was addressed to him in December 2021. (**Exhibit 27**, pgs. 45-46).

Dr. Michael Loughren, PhD, testified that nurse anesthetists do not have access to amphetamines that could account for Major LeDoux's positive urinalysis. (**Exhibit 41**).

At her trial, testimony was elicited that if Major LeDoux had wanted to take amphetamine, she could have obtained a valid prescription, and she would have medical background to obtain one. (**Exhibit 42**).

Major LeDoux also presented evidence of her parenting plan, which linked the custody of her kids to her military service. (**Exhibit 43**).

Major LeDoux also presented evidence of a digital forensic extraction of her phone in the 14 days leading up to her urine sample on August 16, 2021, which included her GPS locations (**Exhibit 44a**), her biometric data (**Exhibit 44b**), and her financial transfers (**Exhibit 44c**). Major LeDoux presented this evidence through an expert digital forensic examiner. (**Exhibit 27**, pgs. 127-132; **Exhibit 45**). The forensic examiner also provided testimony about the website redirect and their Instagram page to confirm that the FindMyFormula products Plaintiff purchased came from the rebranded company known as Thesis. (**Exhibit 27**, pgs. 133-137). The forensic examiner also authenticated pages from the Thesis website about the products Major LeDoux had purchased and ingested to confirm the product promises, descriptions, and website version of the ingredients. (**Exhibit 27**, pgs. 138-172; **Exhibit 45**).

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 12
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

In defense of her criminal allegations, Major LeDoux obtained evidence of additional private testing, which tested negative after she ceased ingesting the Thesis product. (**Exhibit 27**, pgs. 173-178; **Exhibit 30**). Major LeDoux also obtained additional urinalysis testing after she ceased ingestion of the Defendants' product. (**Exhibit 29**). Major LeDoux has been tested for drug tests before and after the one at issue in this case, and each of those tests was negative for any drugs of abuse or anything illicit or without a prescription. (**Exhibit 46**).

**V.    ARGUMENT**

**A.    Defendants' Motion is Improper and Should be Denied**

**1.    Defendants Improperly Seek Evidentiary Rulings**

Defendants improperly use this motion for partial summary judgment for the sole purpose of seeking evidentiary rulings. Parties may not use motions for partial summary judgment for the stand-alone purpose of establishing facts. *Mullaney v. Hilton Hotels Corp.*, 634 F. Supp. 2d 1130, 1161 (D. Haw. 2009) (holding that a motion for partial summary judgment cannot be used for "the sole object of which is to adjudicate issues of fact which are not dispositive of any claim or part thereof." (quoting *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 558 (N.D.Ill.1984)); *Matsuura v. E.I. du Pont de Nemours & Co.*, Civ. No. 00-00615 SOM-LEK, 2007 WL 602204, at *2, 2007 U.S. Dist. LEXIS 11424, at *15 (D. Haw. Feb. 16, 2007) (gathering cases and summarily denying Plaintiff's motion for partial summary judgment because it constituted an improper stand-alone motion for the purpose of establishing facts).

**2.    Defendants Did Not Seek Leave of the Court to Challenge the CPA Claim**

Defendants' motion for summary judgment on the CPA claim is identical to Defendants' Rule 12(b)(6) motion to dismiss Plaintiff's CPA claim. Merely labeling this recycled argument

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 13
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

as a summary judgment motion does not transform its substance. And courts evaluate motions based on their substance, not their title. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (citing *United States v. State of Oregon*, 769 F.2d 1410, 1414 n. 4 (9th Cir.1985)).

If anything, this is a motion for judgment on the pleadings. "Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). Either way, the new motion is identical to the prior motion and was evaluated by the court under that exact same standard.

This makes their current motion an amended pleading (albeit with the only possible amendment being to transform it into a motion for judgment on the pleadings), requiring leave of the court before Defendants could file. W.D. Wash. LCR 15 (2025) (requiring parties to seek leave before amending pleadings). But Defendants did not withdraw their prior previous motion to dismiss the CPA claim, and they did not seek leave of the court to refile as a new motion. Thus, Defendants' motion for Summary Judgment on the CPA claim is neither a motion for Summary Judgment nor properly before the Court.

**B.    Defendants Failed to Meet Their Initial Burden; Their Motion Should be Denied**

**1.    Defendants Did Not Challenge Specific Claims**

As a threshold issue, parties must clearly state the basis for their summary judgment motion. *Celotex* at 323, 106 S.Ct. 91; *Katz v. Children's Hosp*., 28 F.3d 1520, 1534 (9th Cir.1994) (requiring moving party to put the other party on proper notice). It is axiomatic then

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 14
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

that a core requirement of this is for the moving party to state the claims they are attacking. But the Defendants do not do so here. Nowhere in Defendants' motion do they even list the claims they are attacking, except for one discussed below. Nowhere in Defendants' motion do they argue that there is a lack of a genuine issue of material fact to any specific claim.

Defendants argue in their motion that summary judgment is "warranted on three issues". First, Plaintiff lacks evidence that Defendant's products caused her positive urinalysis. Second, Plaintiff lacks evidence that her failed urinalysis caused her failed promotion, military separation, loss of pension, and risk of losing custody of her children. And third, that Plaintiff's Consumer Protection Act claim is legally barred. Then they ask the Court in their proposed order for it to apply summary judgment to any claim "to the extent" it relies on those factual assertions. (Dkt. 114, pg. 17).

But that is not how summary judgment works. Neither the Court nor Plaintiff carries the burden of making the case for Defendants. And Plaintiff carries no burden to defend against arguments not made out of concern that the Court may shoehorn Defendants' factual assertions into a justifiable case for summary judgment. Plaintiff need not fear ghosts.

### 2.    Defendants' Motion Denied Plaintiff Due Process

Defendants violated Plaintiff's due process rights by failing to provide notice of a claim or a part of a claim they sought to challenge. This failure deprived Plaintiff of the opportunity to effectively respond. Due process guarantees Plaintiff the right to be heard in a meaningful manner and at a meaningful time. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). The Western District of Washington recently addressed this exact issue in *Barsness v. United States*, No. 2:23-cv-00427, at *5 (W.D. Wash. Aug. 14, 2025). In that case, Defendant moved for summary judgment on causation against Plaintiff's two claims by arguing that Plaintiff's expert witnesses

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 15
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1    failed to show the required causality. But Defendant only addressed one of Plaintiff's two claims

2    in its brief. The court denied summary judgment on the unaddressed claim, holding that "a non-

3    moving party must receive adequate notice and an opportunity to respond to the moving party's

4    arguments before summary judgment can be entered against it." *Barsness* at *5.

5            Unlike in *Barsness*, no portion of the Defendants' motion for summary judgment

6    addresses any claim. Their language "to the extent" is not sufficient to satisfy Plaintiff's due

7    process rights.

8            A non-moving party must receive adequate notice and an opportunity to respond to the

9    moving party's arguments before summary judgment can properly be entered against it. *Portland*

10    *Retail Druggists Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981); See also

11    *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 U.S. Dist. LEXIS 17523, 2015 WL

12    660214, at *1 (N.D. Cal. Feb. 12, 2015) ("As the party moving for summary judgment, Plaintiff

13    was required to frame the relief sought by his motion clearly, in order to provide adequate notice

14    to the opposing party and to the Court."). Because the Defendant's motion does not provide such

15    notice to Plaintiff with respect to any claim, the Court should not entertain summary judgment on

16    any claim.

### 3.     Defendants' Motion Does Not Provide Admissible Evidence[2]

           A trial court can only consider admissible evidence on a motion for summary judgement.

*Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002), citing Fed. R. Civ. P. 56(e); *Beyene v.*

*Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). A party may authenticate

through an affidavit that complies with Fed. R. Civ. P. 56(c)(4) or through Federal Rule of

---

[2] *See* **Exhibit 61**, Plaintiff Objections to Defense Exhibits for the details on why specific exhibits cannot be considered.

PLAINTIFF'S RESPONSE TO THESIS' MOTION FOR PARTIAL SUMMARY JUDGMENT – NDIs and ADULTERATION – 16
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1   Evidence 901(b) (10 methods) or 902 (self-authenticating). *Orr* at 774. The Ninth Circuit has

2   repeatedly held that unauthenticated documents cannot be considered in a motion for summary

3   judgment. *Id.*

4       In a summary judgment motion, documents authenticated through personal knowledge

5   must be "attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the

6   affiant must be a person through whom the exhibits could be admitted into evidence." *Canada*,

7   831 F.2d at 925 (citation omitted). A lawyer cannot simply submit a declaration listing the

8   exhibits the party wants the court to consider and have it be admissible. See generally, *Orr v.*

9   *Bank of Am.*, 285 F.3d 764. Mr. Houghton's declaration is insufficient to avoid objections to

10  authentication and hearsay. (Dkt. 113).

11      Defendants must authenticate the evidence in their initial brief, and they cannot do so on

12  reply. *Sullivan v. City of Marysville*, C13-0803, (WD of Washington, Feb. 5, 2014) (rejecting

13  party's attempt to authenticate on reply); See *Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir. 1996)

14  ("Issues raised for the first time in the reply brief are waived."). *Tovar v. U.S. Postal Serv.*, 3

15  F.3d 1271, 1273 (9th Cir. 1993) (striking portions of a reply brief that presented new

16  information).

17  ### C.      Defendants' Motion Does Not Articulate Any Essential Element They Purport to Defeat

18      Other than challenging the CPA claim in the same manner that they have before, the

19  Defendants do not allege any essential element Plaintiff cannot carry. Their motion makes a

20  conclusory statement in the first paragraph of their argument that, "[a]s movant, Thesis

21  Defendants meet their burden by 'show[ing] that [LeDoux] does not have enough evidence of an

22  essential element to carry [her] ultimate burden of persuasion at trial.'" *Nissan Fire & Marine*

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 17
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

*Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)" (Dkt. 114, pg. 9), but they do not cite any element. The Defendants' Motion is not a Motion for Partial Summary Judgment. Instead, they point to assertions that Plaintiff cannot prove their product caused the positive urinalysis; they assert that Plaintiff cannot prove consequences of the positive urinalysis; and lastly, they challenge the CPA claim again. Note: Thesis never avers *any element* that Plaintiff cannot carry at trial; instead, Thesis avers that "[s]ummary judgment is warranted on three *issues*," *Id* (emphasis added), none of which are elements of any claim. Defendants dispute the manner or extent of damages as grounds for summary judgment, but these are questions that are reserved for the jury. This is a motion cast in the dye of motion for partial summary judgment that instead tries to limit the admissibility of evidence. This reason alone warrants the denial of the motion.

### D.    Rule 56(g) Does Not Authorize Defendants' Improper Standalone Evidentiary Motion

Rule 56(g) does not authorize standalone evidentiary motions. Defendants' motion seeks no summary judgment on any claim or defense; instead, it merely asks the Court to deem certain facts established or unestablished. That is not a permissible use of Rule 56. See *Milliner v. Mutual Sec., Inc.*, No. 15-cv-03354 (N.D. Cal. Aug. 18, 2016) (rejecting similar misuse). Rule 56(g) is ancillary to Rule 56(a), applying only after the Court has adjudicated a proper summary judgment motion. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). Because Defendants never invoked Rule 56(a) on any claim or defense, Rule 56(g) is inoperable here, and the Court should decline to make any factual or evidentiary findings under that rule.

This is particularly true where Defendants' factual assertions rest on unauthenticated laboratory reports that fail the standard set out in *Orr v. Bank of America*, 285 F.3d 764 (9th Cir.

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 18
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

2002). Even if such documents were admissible, the negative test results they tout—generated years after Plaintiff's ingestion—prove nothing. Scientific studies explain the instability of amphetamine compounds in exclusive pills of only amphetamine, indicating that the passage of time degrades the detection of amphetamine.[3] The Defendants' alleged belated product testing is scientifically insignificant. Defendants' contention that their later negative test results establish the historical non-existence of amphetamines is a classic *non sequitur*—a conclusion that does not follow from the premise—and should be rejected outright.

E.    **Even if the Court Somehow Finds a Proper Motion for Partial Summary Judgment, Defendants' Motion Should be Denied – Their Motion Does Not Defeat Any Claim**

Defendants' motion does not address, much less negate, any element of duty, breach, or causation writ large; their motion does not even point to an element of any specific claim, which alone defeats this motion as one of partial summary judgment. Instead, Defendants invite the Court to "dismiss LeDoux's claims *to the extent that* (a) they involve allegations of amphetamine adulteration, (b) they involve allegations that LeDoux's positive urinalysis caused delayed or failed promotion, mandatory separation from the military, and attendant loss of pension and child custody, and (c) they rely on the Consumer Protection Act" (Dkt. 114, ¶VI). Defendants' assertions regarding testing of their product "samples" should be completely discounted, given the lack of chain of custody or any concrete evidence that the test results provide any admissible, reliable evidence. (**Exhibit 59,** as opposed to the authenticated collection and chain of custody in **Exhibit**

---

[3] Forensic Sci. Int'l, 2018, "Stability of amphetamine impurity profiles during 12 months of storage," doi:10.1016/j.forsciint.2018.04.043): amphetamines in products (e.g., pills or capsules) have been found to degrade over time and under various storage conditions, raising questions about the reliability of product testing conducted months or years after manufacture or consumption. A controlled study demonstrated that amphetamine purity profiles degraded significantly over a 12-month storage period, with shifts in impurity ratios and reduced detectability. This study examined amphetamines seized by law enforcement, and the manner of storage and time that elapsed impacted the results, noting the instability of amphetamines as a compound.

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 19
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

**58**). They assert some reliability in post-court-martial testing, claiming there is "no evidence" of amphetamine adulteration while asserting that they cannot discern what ingredients were in which product lots or batches sold to and ingested by Plaintiff, essentially trying to hide behind a lack of traceability (**Exhibit 60**) after Thesis Defendants took affirmative steps to remove the identifying information and expiration dates (**Exhibit 63**).

Notwithstanding that this Court's exclusion of evidence in a summary judgment motion is reviewed for an abuse of discretion (*GE v. Joiner*, 522 U.S. 136, 141, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997)), and that the Ninth Circuit "must affirm the district court unless its evidentiary ruling was manifestly erroneous and prejudicial (522 U.S. at 142; *Maffei v. N. Ins. Co.*, 12 F.3d 892, 897 (9th Cir. 1993)), to insulate the Court's Order from reversal, the Court could reach findings that even if a reviewing authority were to conclude the Defendants' motion somehow represents a Motion for Partial Summary Judgment with admissible evidence, and substantively deny the Motion.

Even making a substantive analysis, none of the claims in Plaintiff's Amended Complaint would be defeated on Summary Judgment. To be clear, Plaintiff does not abandon her illumination that this motion fails as a Motion for Partial Summary Judgment because it is not proper, nor does she abandon the position that nearly all evidence Defendants brought in their motion is inadmissible. The following arguments that address substance are only made in the alternative to our position that the Defendants' motion is not a valid or evidentiarily supported Motion for Partial Summary Judgment.

    **1.**     **Defendants' Motion Does Not Challenge Any Element of Count I (Negligence)**

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 20
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

In Count I, Plaintiff alleges that Defendants negligently designed, manufactured, marketed, and sold nootropic products that were adulterated and unsafe, including but not limited to products adulterated with amphetamines, unapproved new dietary ingredients, and other contaminants. (Dkt. 45, ¶¶ 144-50). Plaintiff further alleges that Defendants breached their duty of reasonable care in the testing of ingredients, failing to ensure product purity, or failing to warn of foreseeable dangers, proximately causing Plaintiff's injuries and damages. (*Id.* ¶¶ 45, 74, 78, 150).

Plaintiff's negligence claim does not depend exclusively on an amphetamine pathway. Rather, Plaintiff pleads that Defendants' negligence caused multiple and interrelated injuries, including but not limited to: (1) ingestion of adulterated products; (2) exposure to unlawful new dietary ingredients; (3) reputational and professional harms stemming from false-positive drug results; and (4) economic losses flowing from her involuntary separation and loss of military benefits.

Under well-settled law, Defendants cannot obtain partial summary judgment simply by disputing one factual mechanism of harm. Whether amphetamine adulteration was one, some, or all of the causal pathways is a jury question, not a basis for Rule 56 relief. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions..."). Even if the Plaintiff fell short on amphetamines, Plaintiff's negligence claim would still proceed on alternative defect and causation theories pled.

### 2. Defendants' Motion Does Not Challenge Any Element of Count II (Strict Liability – Design/Manufacture)

Defendants' motion also fails with respect to Plaintiff's strict liability claim for design and manufacturing defects. Plaintiff must show: (1) Defendants placed a product into the stream

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

of commerce; (2) the product was defective in design or manufacture when it left Defendants' control; (3) the defect rendered the product unreasonably dangerous; and (4) the defect proximately caused Plaintiff's injuries. *See* Restatement (Second) of Torts § 402A. Plaintiff's injuries are not limited to those that stem from the positive amphetamine result.

Plaintiff's Complaint pleads multiple, overlapping defect theories, including but not limited to: (1) adulteration of products with amphetamines; (2) inclusion of unapproved new dietary ingredients; (3) failure to ensure ingredient purity or lawful sourcing; and (4) failure to test for and remove contaminants. (Dkt. 45, ¶¶151-56). Plaintiff also pleads the foreseeable harms arising from these defects, including her positive urinalysis, reputational injury, and economic losses. Defendants' motion addresses only whether Plaintiff can "carry the burden" that amphetamine adulteration specifically caused her positive urinalysis. Even if the Court were to assume arguendo that Plaintiff could not carry its burden on that narrow factual pathway (which Plaintiff disputes), Defendants' motion would not dispose of the strict liability claim. Plaintiff's claim is not limited to amphetamines, but to the broader defect of unsafe, adulterated products. A jury could conclude that Defendants' products were unreasonably dangerous because they contained unlawful NDIs, regardless of whether amphetamines were an adulterant. The precise mechanism of harm—whether amphetamines or NDIs—is a matter for the jury to resolve. *Anderson*, 477 U.S. at 255 (questions of inference and causation are jury functions).

### 3. Defendants' Motion Does Not Challenge Any Element of Count III (Strict Liability – Failure to Warn)

Defendants' motion is equally defective as to Plaintiff's strict liability claim for failure to warn. Plaintiff must show: (1) Defendants sold a product; (2) the product was unreasonably dangerous because it lacked adequate warnings or instructions; and (3) the inadequate warning

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

was a proximate cause of Plaintiff's injuries. *See* Restatement (Second) of Torts § 402A, comment j. Again, Plaintiff's injuries are not limited to the fallout from her positive urinalysis.

Plaintiff's Complaint pleads that Defendants marketed and sold products without adequate warnings regarding: (1) potential adulteration with amphetamines; (2) inclusion of unlawful new dietary ingredients; (3) lack of FDA approval; (4) potential for false-positive drug results; and (5) risks of serious professional, reputational, and personal harm resulting from ingestion. (Dkt. 45, pgs. ¶¶157-171). Plaintiff further pleads that Defendants' aggressive marketing campaign—specifically branding their products as superior and natural alternatives to Adderall and Ritalin—created the foreseeable risk that consumers, including Plaintiff, would ingest the products in reliance on the safety claims and without knowledge of the true risks.

Whether Defendants should have warned about amphetamine adulteration, NDIs, or the risk of positive drug tests is a question for the jury. Plaintiff's strict liability failure-to-warn claim does not depend exclusively on amphetamine inclusion; Defendants' motion cannot succeed.

### 4.    Defendants' Motion Cannot Defeat Count IV (Breach of Warranty)

Defendants' motion also cannot succeed against Plaintiff's claim for breach of warranty. To prevail, Plaintiff must show: (1) Defendants made an express or implied warranty regarding their products; (2) the products did not conform to those warranties; and (3) the breach proximately caused Plaintiff's injuries. *See* U.C.C. §§ 2-313, 2-314, 2-315.

Plaintiff's Complaint pleads that Defendants made both express warranties (through marketing representations and labeling, including that the products were safe, effective, and natural alternatives to Adderall and Ritalin) and implied warranties (that the products were lawful to consume, merchantable, fit for ordinary use, and free from adulteration or illegal ingredients). (Dkt. 45, ¶¶172-177). Plaintiff alleges that these warranties were false because the

products contained adulterants, unapproved NDIs, and contaminants, and were marketed in ways that overstated safety and effectiveness while concealing risk.

Defendants' motion does not challenge the existence of the warranties or their breach. Instead, it seeks to carve away one factual theory of nonconformance—amphetamine adulteration—while ignoring the elements. Even if a jury were to conclude that Plaintiff was unable to prove amphetamine contamination, Plaintiff could still establish breach of warranty by showing that the products contained unlawful NDIs, lacked FDA approval, carried a risk of positive drug tests, or failed to perform safely as marketed. Any one of those breaches independently sustains a Claim IV.

> **5.    Defendants' Motion Cannot Defeat Count V (Fraud/Misrepresentation)**

Defendants' motion fares no better against Plaintiff's fraud and misrepresentation claim. To prevail at trial, Plaintiff must show: (1) Defendants made a material misrepresentation of fact; (2) Defendants knew the representation was false or acted with reckless disregard for its truth; (3) Defendants intended that Plaintiff rely on the misrepresentation; (4) Plaintiff justifiably relied; and (5) Plaintiff suffered damages as a result. *See* Restatement (Second) of Torts § 525. Plaintiff's Complaint alleges multiple misrepresentations and omissions, including: (1) marketing Thesis products as safe, effective, and legal alternatives to Adderall and Ritalin; (2) representing that the products were carefully formulated, tested, and pure; (3) failing to disclose that the products contained unlawful NDIs or other adulterants; and (4) concealing the risk of positive drug results and other foreseeable harms. (Dkt. 45, ¶¶178-185).

Defendants' motion improperly purports to narrow this claim to whether Plaintiff can prove that amphetamine adulteration specifically caused her positive urinalysis. But fraud

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 24
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1    liability does not depend exclusively on the existence of amphetamines in the products. The

2    fraud lies in the misrepresentations and omissions themselves—statements about safety, legality,

3    purity, and comparative effectiveness—that induced Plaintiff to purchase and consume

4    Defendants' products. Even if a jury was unable to conclude that amphetamines were one of the

5    adulterants, Plaintiff could still prove fraud based on Defendants' concealment of NDIs,

6    contamination risks, or the absence of adequate testing.

7        **6.    Defendants' Motion Cannot Defeat Count VI (Consumer Protection /**

8             **State Statutory Claim)**

9        Defendants' motion also fails against Plaintiff's statutory consumer protection claim. To

10   establish liability under the Washington Consumer Protection Act, [RCW 19.86.020], Plaintiff

11   must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) that

12   impacts the public interest; (4) injury to Plaintiff's business or property; and (5) causation.

13       Plaintiff's Complaint pleads that Defendants engaged in unfair and deceptive acts,

14   including: (1) marketing their products as safe, lawful, and superior to Adderall and Ritalin; (2)

15   omitting material facts about adulteration, NDIs, and the risk of positive drug tests; (3) failing to

16   disclose the absence of FDA approval; and (4) profiting from consumer reliance on these

17   misleading representations. (Dkt. 45, pgs. ¶¶186-197). These acts occurred in commerce,

18   affected consumers broadly, and caused Plaintiff harm. Defendants' motion does not engage with

19   these elements. Instead, it attempts to narrow the claim by arguing an assertion that Plaintiff

20   lacks evidence of one specific harm pathway—amphetamine adulteration causing a positive

21   urinalysis. But consumer protection statutes do not require Plaintiff to prove that precise

22   mechanism. Whether Defendants engaged in unfair or deceptive conduct that caused harm

23   remains. Plaintiff has pled multiple pathways of deception and injury: NDIs, concealment of

24

25

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 25
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

legality issues, misleading marketing, and the risk of reputational or professional loss from ingesting adulterated supplements.

### 7.    Conclusion of Elemental Section

Defendants' motion attempts to narrow Plaintiff's claims by focusing exclusively on the amphetamine-positive urinalysis pathway. But none of her claims of liability rise or fall on whether amphetamines in particular were the sole adulterant, the exclusive breach, the singular concealed ingredient, etc. Rule 56 does not authorize courts to grant summary judgment on a sliver of a causation theory while leaving the claim otherwise intact. *Celotex*, 477 U.S. at 322–23 (summary judgment appropriate only when "there is no genuine issue as to any material fact"). Even if a jury could not reach proof of amphetamines, every single claim in the Complaint remains.

Summary judgment cannot be used to excise one factual theory of causation when, as here, Plaintiff has pleaded and can support multiple theories. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) (jury, not judge, resolves disputes about inference and causation). Rule 56 does not allow Defendants to defeat an entire claim by disputing a single mechanism of breach. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56 does not authorize summary judgment on a damages theory while leaving the core liability intact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Parties may not use motions for partial summary judgment for the stand-alone purpose of establishing facts. *Mullaney v. Hilton Hotels Corp*., 634 F. Supp. 2d 1130, 1161 (D. Haw. 2009) (holding that a motion for partial summary judgment cannot be used for "the sole object of which is to adjudicate issues of fact which are not dispositive of any claim or part thereof" (quoting *SFM Corp. v. Sundstrand Corp.*, 102 F.R.D. 555, 558 (N.D.Ill.1984)); *Matsuura v. E.I. du Pont*

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 26
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

*de Nemours & Co.,* Civ. No. 00-00615 SOM-LEK, 2007 WL 602204, at *2, 2007 U.S. Dist.

LEXIS 11424, at *15 (D. Haw. Feb. 16, 2007) (gathering cases and summarily denying

Plaintiff's motion for partial summary judgment because it constituted an improper stand-alone

motion for the purpose of establishing facts).

### F. Even if the Court Somehow Finds a Proper Motion for Partial Summary Judgment with Admissible Evidence, Defendants' Motion Should be Denied – Several Pieces of Evidence Defeat Defendants' Evidentiary Assertions

Without waiving the arguments made that Defendants' Motion is not proper or supported

for Partial Summary Judgment, Plaintiff feels compelled to provide admissible pieces of

evidence that defeat any challenge to amphetamine causation and support findings of undisputed

material facts which are favorable to Plaintiff.

### 1. Evidence of Amphetamine Exposure by Defendants' Product(s)

First, Plaintiff has produced sufficiently authentic evidence[4] from Dr. Okano's court-

martial testimony (**Exhibit 20**) regarding prosecution exhibits 9, 10, and 12 (**Exhibit 48**), which

document the collection, chain of custody, shipping, and testing of a urine sample attributed to

Major LeDoux, collected on August 16, 2021 (**Exhibit 50a**), which tested positive for

amphetamines. Dr. Okano's testimony also indicates that amphetamine is detected by the Army's

urinalysis testing for one to four days after exposure. (**Exhibit 20**).

---

[4] Once the trial judge determines that there is prima facie evidence of genuineness, the evidence is admitted, and the trier of fact makes its own determination of the evidence's authenticity and weight. *See Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1302 (9th Cir. 1978) (per curiam). *Orr v. Bank of Am.*, 285 F.3d 764, 773 n.6 (9th Cir. 2002). Authentication is a special aspect of relevancy concerned with establishing the genuineness of evidence. *See* Fed. R. Evid. 901(a) advisory committee's note; *Orr*, 285 F.3d at 773 n.7. "A document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it, signed it, used it, or saw others do so." 31 Wright & Gold, *Federal Practice and Procedure: Evidence* § 7106, at 43 (2000); *Orr*, 285 F.3d at 774 n.8. Federal Rule of Civil Procedure 56(e) requires that affidavits be made on personal knowledge, that the affiant be competent to testify to the matters stated therein, and that sworn or certified copies of all papers referred to in an affidavit be attached thereto. *See* Fed. R. Civ. P. 56(e); *Orr*, 285 F.3d at 774 n.9.

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 27
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

Second, Plaintiff provides proof that Major LeDoux purchased the Defendants' product (**Exhibit 49**). (Dkt. 129, Exhibit 1).

Third, Plaintiff provides proof that Major LeDoux ingested the Defendants' product. (Dkt. 80). (Dkt. 129, Exhibit 1).

Fourth, Plaintiff provides evidence that Plaintiff discontinued her ingestion of the Defendants' product on or about September 27, 2021. (**Exhibit 47**). (Dkt. 80) (Dkt. 129, Exhibit 1).

Fifth, on October 5, 2021, Plaintiff submitted another sample of her urine for private testing and a sample of her hair for hair follicle testing. (**Exhibit 55**). (**Exhibit 56**).

Sixth, both tests of Plaintiff's biological material that Plaintiff submitted on October 5, 2021, tested negative for the presence of amphetamine. (**Exhibit 55**). (**Exhibit 56**).

Seventh, all of Plaintiff's Army drug urinalysis tests before and after her ingestion of Defendants' products tested negative for any drugs of abuse or pharmaceuticals without a prescription. (**Exhibit 46**).

Eighth, Mr. Dan Freed's authenticated court-martial testimony admitting that neither his entity nor his product manufacturer screens their ingredients for amphetamines. (**Exhibit 52**).

Ninth, Mr. Freed's authenticated deposition admitting his company has had three complaints by customers for positive drug tests, and tenth, Mr. Freed has had access to Adderall with a prescription and without it. (**Exhibit 62**).

Eleventh, the FDA Warning Letter issued to the Brand Nutra Defendants about their deficient practices, contamination, and adulteration. (**Exhibit 53**).

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 28
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

1    Even though the Defendants' Motion did not sustain their initial burden, Plaintiff

2    produces evidence that creates genuine disputes of material fact on "issues" raised in their

3    pleading.

4

5                    **2.      Evidence that Positive Amphetamine Urinalysis Harmed Plaintiff**

6    The Defendants assert that Plaintiff cannot sustain "claims to the extent that… they

7    involve allegations that LeDoux's positive urinalysis caused delayed or failed promotion,

8    mandatory separation from the military, and attendant loss of pension and child custody" (Dkt.

9    114, ¶VI) while supplying the Court with responses to discovery provided and sworn to by

10   Plaintiff. Dkt. 113-1, pgs. 239-261. Plaintiff also provides the authenticated declaration of Colonel

11   (Retired) Kim Biever, evidence that Plaintiff's flag for the investigation from her positive

12   amphetamine urinalysis disrupted her promotion in FY21. (**Exhibit 51**). (**Exhibit 9**).

13

14              **G.      The Court Could *Sua Sponte* Grant Summary Judgment for Plaintiff**

15   If the Court treats Defendants' filing as a proper Rule 56 motion, it may just as readily

16   grant summary judgment in Plaintiff's favor. Under Rule 56(f)(1), a district court may enter

17   summary judgment for the nonmovant when the movant has had notice and a full opportunity to

18   present its evidence, even without a cross-motion. *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir.

19   2014) (en banc) (citing *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th

20   Cir. 2003); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)).

21   By moving for summary judgment, Defendants placed themselves on notice that they

22   were required to come forward with all evidence supporting their positions. *Celotex Corp. v.*

23   *Catrett*, 477 U.S. 317, 326, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The authority to grant

24   summary judgment *sua sponte* was made explicit in the current version of Rule 56, effective as

25

---

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 29
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

of December 2010. Fed. R. Civ. P. 56(f). *Id.* By not attacking any of Plaintiff's claims regarding any genuine dispute as to the material facts, if the Court concludes that Defendants' motion satisfies the procedural requirements of Rule 56, the same record enables entry of judgment in Plaintiff's favor.

## VI.    REQUESTED RELIEF

For the reasons listed above, Plaintiff JOANN LEDOUX respectfully requests that this Honorable Court deny the THESIS DEFENDANTS' Motion for Partial Summary Judgment.

I certify that this memorandum contains 8,434 words, in compliance with the Local Civil Rules.

DATED this 8th day of December 2025.

ATTORNEYS FOR PLAINTIFF

*/s/ Jocelyn C. Stewart*
**Jocelyn C. Stewart** WSBA No. 58100
**Law Office of Jocelyn C Stewart, Corp.**
1200 Pacific Ave. # 600
Tacoma, WA 98402
Phone: (253) 212-6940
Email: jocelyn@ucmj-defender.com
Email: jen@ucmj-defender.com

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 30
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused true and correct copies of the foregoing document to be served upon the following, at the addresses stated below, via the court's CM/ECF system which will send notification of such filing to the attorneys of record for the parties.

| | |
|---|---|
| Jeremy E. Roller, Esq.<br>Arete Law Group<br>600 University St., Ste 2420<br>Seattle, WA 98101-129<br><br>jroller@aretelaw.com<br>jfischer@aretelaw.com<br>kgreenberg@aretelaw.com | *Attorneys for Defendants Outliers, Inc., Matt Rubin, and Daniel Freed* |
| Richard D. Houghton, *Pro Hac Vice*<br>Dane Ball, *Pro Hac Vice*<br>Michelle Stratton, *Pro Hac Vice*<br>Murphy Ball Stratton, LLP<br>1001 Fannin, Ste 720<br>Houston, TX 77002<br><br>rhoughton@mbssmartlaw.com<br>qmurphy@mbssmartlaw.com<br>mstratton@mbssmartlaw.com<br>dball@mbssmartlaw.com | *Attorneys for Defendants Outliers, Inc., Matt Rubin, and Daniel Freed* |
| Christian McGuire, *Pro Hac Vice*<br>Murphy Ball Stratton, LLP<br>2219 E. 11ᵗʰ Street, Apt. 129<br>Tulsa, OK 74104<br><br>cmcguire@mbssmartlaw.com<br>christianm.mcguire@gmail.com | *Attorneys for Defendants Outliers, Inc., Matt Rubin, and Daniel Freed* |
| Laurie M. Friedl, Esq.<br>Kevin J. Craig, Esq.<br>Gordon Rees Scully Mansukhani, LLP<br>701 Fifth Avenue, Ste 2100<br>Seattle, WA 98104<br><br>lfriedl@grsm.com<br>kcraig@grsm.com<br>Seaasbestos@grsm.com | *Attorneys for Defendants Brand Nutraceuticals, and Brand Packaging Group, Inc.* |

PLAINTIFF'S RESPONSE TO THESIS' MOTION FOR PARTIAL SUMMARY JUDGMENT – NDIs and ADULTERATION – 31 No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494

Joshua N. Severit, *Pro Hac Vice*
David J. Fisher, *Pro Hac Vice*
Manning Gross + Massenburg, LLP
1405 N. Green Mount Road, Ste 400
O'Fallon, IL 62269

jseverit@mgmlaw.com
dfisher@mgmlaw.com
jsova@mgmlaw.com
lbradley@mgmlaw.com

*Attorneys for Defendants Brand Nutraceuticals, and Brand Packaging Group, Inc.*

Daniel R. Olsen, *Pro Hac Vice*
Manning Gross + Massenburg, LLP
100 Pringle Avenue, Ste 750
Walnut Creek, CA 94596

dolsen@mgmlaw.com
Olsen_law@comcast.net

*Attorneys for Defendants Brand Nutraceuticals, and Brand Packaging Group, Inc.*

Dated this 8th day of December, 2025.

*Jocelyn Stewart*
Jocelyn C. Stewart, Litigation Attorney

PLAINTIFF'S RESPONSE TO THESIS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT – NDIs and ADULTERATION – 32
No. 3:24-cv-05808-TMC

**Law Office of Jocelyn C Stewart, Corp.**
1201 Pacific Avenue, Ste 600
Tacoma, WA 98407
Phone: (253) 317-8494