# Exhibit BB

**Hallucinated/Defective Citations in Plaintiff's *Daubert* Motion and Expert Materials**

| *Quote/Paraphrase* | *Location in Plaintiff's Motion* | *Alleged Citation* | *Notes* |
|---|---|---|---|
| "Supplement retains provide no scientifically valid basis to conclude a product was free of amphetamine at the time of consumption" | Dkt. 176 (LeDoux's Daubert Motion) at 10 | Exhibit 6 (Shippee Report) | Quote not found in Shippee Report |
| "Testing conducted years later cannot rule out prior contamination" | Dkt. 176 at 10 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "negative findings on aged retains do not establish what was present at the time of ingestion" | Dkt. 176 at 10 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "post-production degradation of stimulant compounds." | Dkt. 176 at 10 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "ND" equals "never present" | Dkt. 176 at 11 | No citation (Kelman discussion) | Quote "never present" not found Kelman reports |
| "ISO accreditation does not mean the lab tested for all relevant analogues." | Dkt. 176 at 11 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "COAs can be incomplete or misleading." | Dkt. 176 at 11 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "without validated chain of custody from production | Dkt. 176 at 11 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |

1

| | | | |
|---|---|---|---|
| through testing, you cannot conclude noncontamination." | | | |
| "the most probative evidence of true amphetamine exposure during the relevant timeframe." | Dkt. 176 at 12 | Exhibit 6 (Shippee Report) | Quote not found in Shippee report |
| "did not contain" | Dkt. 176 at 13 | No citation (Kelman discussion) | "Did not contain" not found in Kelman reports |
| "provides no scientifically valid basis to conclude a product was free of amphetamine at the time of consumption" | Dkt. 176 at 14 | Exhibit 6 (Shippee Report) | Quote not found in Shippee report |
| "cannot rule out prior contamination" | Dkt. 176 at 14 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick transcript or report |
| "does not follow any recognized method" | Dkt. 176 at 14 | Exhibit 6 (Shippee Report) | Quote not found in Shippee report |
| "cannot establish the composition of the product consumed at the time of ingestion" | Dkt. 176 at 15 | Exhibit 6 (Shippee Report) | Quote not found in Shippee report |
| "no reliable basis to determine historical contamination" | Dkt. 176 at 15 | Exhibit 8 (Kababick transcript) | Quote not found in Kababick testimony or report |
| "are not consistent with amphetamine withdrawal" | Dkt. 176 at 16 | No citation (Tucker discussion) | Quote not found in Tucker reports. |

| | | | |
|---|---|---|---|
| "unsupported speculation masquerading as scientific fact" | Dkt. 176 at 6 | *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000). | Quote cannot be found in this case. |
| Kellman asserts that . . . Alkemist Labs was ISO-accredited | Dkt. 176 at 11 | Exhibit 2 | Kelman does not mention ISO-accreditation. |
| [Kelman] relies on speculation about theoretical false positives | Dkt. 176 at 12 | None given | Kelman does not conclude that a false positive occurred. |
| Kellman's opinion would mislead the jury by suggesting that negative multi-year-old retains results prove Plaintiff did not ingest amphetamine. | Dkt. 176 at 13 | None given | Kelman does not conclude that LeDoux did not ingest amphetamine. He opined that the amphetamine concentration detected in Ms. LeDoux's urine was consistent with therapeutic doses of Adderall®.Dkt. 177 at 220. |
| Mr. Kababick . . . testified that Dr. Kellman's assumptions lack any analytical verification | Dkt. 176 at 14–15 | Exhibit 8 (Kababick transcript) | Kababick's report and deposition testimony omits discussion of Kelman's methodology or analysis. In fact, Kababick could not even recall Dr. Kelman's name when he was asked who he was purportedly rebutting. *See* Dkt. 177 at PDF 472–473. |
| Dr Tucker's attempt to attribute Plaintiff's symptoms to antidepressant discontinuation . . . . | Dkt. 176 at 16 | Exhibit 2<br><br>Exhibit 4 | Dr. Tucker does not attribute LeDoux's symptoms to antidepressant discontinuation. Tucker instead lists several possible causes of Ledoux's symptoms, including antidepressant discontinuation. |

3

| | | |
|---|---|---|
| 1. Aalberg L, Andersson K, et al. Stability of amphetamine impurity profiles during 12 months of storage. Forensic Science International. 2000;113(1–3):305–312 | Exhibit X to Defs' Motion to Strike and Exclude Plaintiff's Expert Evidence at 3.[1] | The article is not authored by Andersson; it is authored by Nielsen, Villesen, and Lindholst. It was not included in Forensic Science International Vol. 113 in 2000; it was included in Vol. 290 in 2018. It does not span pages 305—312, and instead is found on pages 129–136. https://doi.org/10.1016/j.forsciint.2018.06.039 |
| 2. Holmgren P, Norden-Pettersson L, et al. Stability of seized amphetamine during 32 months of storage. Forensic Science International. 2004;139(2–3):223–227. | Exhibit X at 3. | The article is not authored by Holmgren or Norden-Petterson, but is authored by de le Fuente, et al. The article was not included in Forensic Science International Vol. 139 in 2004, but was included in Forensic Science International: Reports Vol. 2 in 2020. It does not contain page numbers—much less pages 223–227—and is instead identified by an article number: 100095. https://doi.org/10.1016/j.fsir.2020.100095 |
| 3. van Wezel AP, et al. Stereoselective biodegradation of amphetamine and methamphetamine in river microcosms. Environmental Science & Technology. 2009;43(7):2580–2585. | Exhibit X at 3. | The article is not authored by van Wezel, but is authored by Bagnall, et al. The article was not included in Environmental Science & Technology, Vol. 43, Issue 7 in 2009, but was included in Water Research Vol. 47, Issue 15 in 2013. It is not found on pages 2580–2585; it spans pages 5708–5718. https://doi.org/10.1016/j.watres.2013.06.057 |

---

[1] LeDoux failed to attach Appendix D of Kababick's October 22, 2025 report to her *Daubert* motion. We attach it as Exhibit X to this motion to make the Court aware of the hallucinations therein. The lefthand column contains a purported citation to a piece of "Scientific and Scholarly Literature" that Kababick includes in his "Materials Considered" list. Defendants requested copies of these materials from Plaintiff because Defendants had trouble locating the materials—which makes sense because the citations listed are incorrect, as noted in the righthand column. This is true for the nine entries that follow.

4

| | | |
|---|---|---|
| 4. Görgens C, Guddat S, et al. Detection of β-methylphenethylamine, a novel doping substance, by means of UPLC-MS/MS. Drug Testing and Analysis. 2014;6(7–8):742–748. | Exhibit X at 3 | The article is not authored by Görgens or Guddat; it is authored by Cholbinski, et al. The article was not included in Drug Testing and Analysis Vol. 6, Issues 7–8, it was included in Analytical and Bioanalytical Chemistry Vol. 406, Issue 15 in 2014. It does not span pages 742–748, but is found on pages 3681–88. https://doi.org/10.1007/s00216-014-7728-5 |
| 5. ElSohly MA, Salamone SJ. An amphetamine isomer whose efficacy and safety in humans has never been studied. Clinical Toxicology. 2016;54(2):125–132. | Exhibit X at 3 | The article is not authored by ElSohly or Salamone; it is authored by Cohen, et al. The title listed is not complete. It was not included in Clinical Toxicology Vol. 52, Issue 2, but was included in Drug Testing and Analysis Vol. 8, Issue 3–4 in 2016. It is not on pages 125–132, it spans pages 328–333. https://doi.org/10.1002/dta.1793 |
| 6. Austin KG, et al. Amphetamine-like neurochemical and cardiovascular effects of α-ethylphenethylamine analogs found in dietary supplements. Clinical Pharmacology & Therapeutics. 2018;103(5):844–852. | Exhibit X at 3 | The article is not authored by Austin, but is authored by Schindler, et al. It is not found in Clinical Pharmacology & Therapeutics Vol. 103, Issue 5 in 2018; it is found in The Journal of Pharmacology and Experimental Therapeutics Vol. 376, Issue 1 in 2021. It does not span pages 844–852, but spans pages 118–126. https://doi.org/10.1124/jpet.120.000129 |
| 7. Cohen PA, et al. Too little, too late: ineffective regulation of dietary supplements in the United States. New England Journal | Exhibit X at 3 | The article is not authored by Cohen—who actually authored article number 5 above; it is authored by Starr. It is not found in New England Journal of Medicine Vol. 388, Issue 12 in 2023, it is found in American Journal of Public Health Vol. 105, Issue 3 in 2015. It does |

| | | |
|---|---|---|
| of Medicine. 2023;388(12):1105–1112. | | not span pages 1105–1112, it spans pages 478–485. https://doi.org/10.2105/AJPH.2014.302348 |
| 8. Zhang Y, et al. LC–MS/MS chiral separation of "d" and "l" enantiomers of amphetamine and methamphetamine. Journal of Chromatography B. 2019;1125:121729. | Exhibit X at 3 | The article is not authored by Zhang, it is authored by Moore, et al. Defendants could not locate any journal where this article was published or included. It appears to be from SCIEX, a manufacturer of mass spectrometry products, not a peer reviewed journal. The article is marked as "research use only." https://sciex.com/content/dam/SCIEX/pdf/tech-notes/all/RUO-MKT-02-0403_Amphetamine_chiral_final.pdf |
| 9. Bynum ND, et al. Distinguishing drug isomers in the forensic laboratory: GC-VUV in addition to GC-MS for orthogonal selectivity and library matching. Forensic Chemistry. 2022;28:100420. | Exhibit X at 3 | The article is not authored by Bynum; it is authored by Kranenburg, et al. The title of the article is incorrect/incomplete. It was not included in Forensic Chemistry Vol. 28 in 2022, it was included in Forensic Science International Vol. 302 in 2019. It is not article number 100420, it is article number 109900. https://doi.org/10.1016/j.forsciint.2019.109900 |
| 10. Mazzoni M, et al. Contaminants: a dark side of food supplements. Frontiers in Pharmacology. 2021;12:624036. | Exhibit X at 3 | The article is not authored by Mazzoni; it is authored by Costa, et al. It was not included in Frontiers in Pharmacology Vol. 12 in 2021, it was included in Free Radical Research Vol. 53 in 2019. It is not identified by an article number, but instead spans 1113–1135. https://doi.org/10.1080/10715762.2019.1636045 |

| | | |
|---|---|---|
| I have also reviewed the report of James Kababick… [who] underscored the unreliability of the testing that Plaintiff commissioned. | Dkt. 177 at 295 | Kababick testified he had not reviewed the "Plaintiff commissioned" testing when asked about it at his deposition; nor was it mentioned in his report. Dkt. 177 at 392 (48:14–23), *id.* at 205 (no mention of such testing). |
| Materials Considered by Dr. Ronald Shippee, item 17. | Dkt. 177 at 313 | Shippee notes he has reviewed "testimony" of Evelyn Cadman. Defendants are unaware of any such testimony in this case. |
| Materials Considered by Dr. Ronald Shippee, item 18. | Dkt. 177 at 313 | The reports referenced are dated 10/21 and 10/22, not 10/27. Dkt. 177 at 215, 242. |
| Materials Considered by Dr. Ronald Shippee, item 19. | Dkt. 177 at 313 | Kababick's report is dated 10/22, not 10/25. Dkt. 177 at 206. |
| Materials Considered by Dr. Ronald Shippee, item 21. | Dkt. 177 at 313 | "Testimony and Depositions of James Kababick" is suspicious for several reasons. First, Kababick was deposed only once in this case, so depositions (plural) makes no sense. Perhaps more suspicious, though, is that Kababick's deposition transcript was not finalized and circulated to the parties for reading and signing until 6 days after Shippee purportedly issued his report. |

| | | | |
|---|---|---|---|
| Materials Considered by Dr. Ronald Shippee, items 24–26. | Dkt. 177 at 313 | | Items 24, 25, and 26 all seem to be referring to the same disclosures—odd they are listed thrice with inconsistent dates—with items 25 and 26 listing the incorrect date. |
| Materials Considered by Dr. Ronald Shippee, item numbers 41–50. | Dkt. 177 at 314. | | Shippee lists the **exact same** "Scientific and Scholarly Literature" items as Kababick does, with the **exact same** hallucinated citations. |
| 21 CFR § 111.70(d) requires that all batch and lot information be maintained and available for identification purposes. | Ex. V to Defs' Motion to Strike and Exclude Plaintiff's Expert Evidence at 3, Opinion 3.B.1, item 1. | 21 CFR § 111.70(d) | 21 CFR § 111.70(d) says nothing about batch or lot information or maintaining it. Instead, it says: "You must establish specifications for dietary supplement labels (label specifications) and for packaging that may come in contact with dietary supplements (packaging specifications). Packaging that may come into contact with dietary supplements must be safe and suitable for its intended use and must not be reactive or absorptive or otherwise affect the safety or quality of the dietary supplement." |
| Entirety of Kababick's untimely December 1, 2025 report | Ex. V to Defs' Motion to Strike and Exclude Plaintiff's Expert Evidence. | Appendix D (non-existent) | On the final page of the report, Kababick purports to include Appendix D, a list of all supplemental materials considered. No such list is provided—nor has it been provided elsewhere. |