UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOANN LEDOUX,

                    Plaintiff,

       v.

OUTLIERS, INC. (d/b/a THESIS, THESIS
NOOTROPICS, FIND MY FORMULA, and
FORMULA), a Delaware Corporation;
DANIEL FREED, individually; MATT
RUBIN,  individually; BRAND
NUTRACEUTICALS,  INC. (d/b/a BRAND
NUTRA), a New York  Corporation; BRAND
PACKAGING GRO,
                    Defendants.

CASE NO. 3:24-cv-05808-TMC

ORDER TO SHOW CAUSE

## I.   ORDER

Defendants have identified multiple citations in Plaintiff's proposed amended complaint (Dkt. 173), *Daubert* motion (Dkt. 176), motion to strike affirmative defenses (Dkt. 178), expert evidence (Dkt. 194-15; Dkt. 177 at 288–315; Dkt. 194-13), and response to Defendants' motion to strike experts (Dkt. 197) which they believe to be false and "hallucinated" by artificial intelligence. Dkt. 191 at 2–3; Dkt. 193; Dkt. 194 at 14–15; Dkt. 194-17; Dkt. 201 at 1–2.

Federal Rule of Civil Procedure 11 "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well

ORDER TO SHOW CAUSE - 1

grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 provides, in relevant part, that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(2), (3). "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

The Court has no formal rule against the use of generative artificial intelligence to write pleadings and briefs. To the extent attorneys use these tools, they remain bound by Rule 11 to submit truthful legal and factual contentions.

Plaintiff's briefs contain multiple incorrect citations which bear "the emblems of the use of a generative artificial intelligence tool," which can "fabricate or 'hallucinate'" legal precedent and factual assertions. *Romero v. Goldman Sachs Bank USA*, No. 1:25-CV-2857-GHW, 2025 WL 1916119, at *1 (S.D.N.Y. June 25, 2025); *see ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1356 (S.D. Fla. 2025) (addressing allegations in a complaint "that may have been wholly made up by generative AI"). The most troubling errors include:

1.     Plaintiff's proposed amended complaint (Dkt. 173-1)

- Plaintiff quotes text from RCW 7.72.010(2) which does not exist. Dkt. 173-1 ¶ 59. Plaintiff modifies the definition of "manufacturer" to include those who

ORDER TO SHOW CAUSE - 2

"assemble" and exclude those who "remanufacture" a product or component part. Moreover, Plaintiff quotes the definition as one for "manufacturing" rather than "manufacturer" and changes several verbs to singular without bracketing her omissions. *Compare id.*, with RCW 7.72.010(2).

- Plaintiff alleges that Matt Rubin "performed functions that constitute manufacturing activity within the meaning of RCW 7.72, including 'supplying a component part'" for use in defective nootropic supplements. Dkt. 173-1 ¶ 57. The term "supplying a component part" does not exist in RCW 7.72, and the definition of "manufacturer" in RCW 7.72.010(2) does not include someone who "supplies" a component part.

2.     Plaintiff's *Daubert* motion (Dkt. 176)[1]

- Plaintiff submitted over a dozen quotes from various expert reports which do not exist. Defendants provided a table describing the faulty citations in their response to the *Daubert* motion. Dkt. 194-17. The Court reviewed each of the quotes contained in this table and was unable to find any of them in the transcripts or reports Plaintiff cited. For example, Plaintiff cites the deposition of James Kababick to argue that dietary supplements are uniquely prone to "post-production degradation of stimulant compounds," but this quote does not appear in Mr. Kababick's deposition transcript. *Compare* Dkt. 176 at 10, *with* Dkt. 177 at 343–490.

---

[1] Plaintiff submitted a "corrected" *Daubert* motion in an apparent attempt to cure some of the errors described here. Dkt. 192. She later withdrew both versions of the motion—first in part and then in their entirety, Dkts. 203, 204—acknowledging the challenged expert's opinions were no longer relevant after the Court dismissed all claims relating to amphetamine adulteration. Dkt. 203 at 1–2 (citing Dkt. 202).

ORDER TO SHOW CAUSE - 3

- Quoting *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), Plaintiff argues that courts in the Ninth Circuit enforce the requirements of Federal Rule of Evidence 702 "to prevent 'unsupported speculation masquerading as scientific fact' from reaching the jury." Dkt. 176 at 5–6. The quoted text does not appear in *Hankey*.

3.    Plaintiff's motion to strike affirmative defenses (Dkt. 178)

- Plaintiff cites to *Berg v. Chevrolet Motor Div.*, 84 Wn.2d 102, 108, 524 P.2d 226 (1974), which does not exist. Dkt. 178 at 15. The correct citation is *Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 142, 727 P.2d 655 (1986).

- Plaintiff cites *Fair v. King Cnty.* multiple times in her brief. Dkt. 178 at 12–14 (citing *Fair*, 2025 U.S. Dist. LEXIS 79249, at *6–7 (W.D. Wash. Apr. 25, 2025)). Plaintiff includes two quotes which do not exist in *Fair*. *See* Dkt. 178 at 12 ("jurisdictional bar"), 19–20 ("the better rationale for striking lies in the fact that the purported defense amounts to nothing more than a denial of liability").

- Plaintiff quotes language which does not exist in *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 694 F. Supp. 2d 1192, 1223 (W.D. Wash. 2009). Dkt. 178 at 20 ("unclean hands").

- Plaintiff quotes language which does not exist from another order in *In re Washington Mut.* 2011 WL 1158387, at *2 (W.D. Wash. Mar. 25, 2011). Dkt. 178 at 4 ("less stringent").

4.    Plaintiff's expert evidence (Dkt. 194-15; Dkt. 177 at 288–315; Dkt. 194-13)

ORDER TO SHOW CAUSE - 4

- Mr. Kababick's expert report cites several articles which do not exist or are attributed to the wrong author. Dkt. 177 at 204–06; Dkt. 194-15 at 4.[2] Defendants have provided a table describing ten such citations, each of which appears similarly incorrect. Dkt. 194-17 at 5–7.

- Troublingly, Dr. Ronald Shippee's report cites the same articles and includes the same citation errors. *Compare* Dkt. 194-15 at 4, *with* Dkt. 177 at 314. This suggests Plaintiff's counsel may have been so involved with the drafting of expert reports as to "jeopardize the experts' independence." *Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 326 (D. Or. 2013) (addressing whether counsel's assistance in preparing an expert report violated Rule 26).

5.    Plaintiff's response to Defendants' motion to exclude expert evidence (Dkt. 197)

- Plaintiff quotes language which does not exist in *HSS Enters. v. AMCO Ins.*, 2008 U.S. Dist. LEXIS 31659 (W.D. Wash. Apr. 16, 2008). Dkt. 197 at 8 ("harsh sanction").

Plaintiff has conceded that some of the above citations were incorrect and has seemingly tried to address the errors. Dkt. 192 at 1–4; Dkt. 195 at 2–3. Her explanations and corrections are incomplete at best and misleading at worst. Plaintiff's "corrected" *Daubert* motion replaced some false quotations with real ones but, in doing so, completely changed their meaning. *See, e.g.,* Dkt. 192 at 2–3 ("*Original*: Dietary supplements are uniquely prone to trace adulteration

---

[2] For example, Mr. Kababick cites one article titled "Distinguishing drug isomers in the forensic laboratory: GC-VUV in addition to GC-MS for orthogonal selectivity and library matching" authored by Bynum ND, et al. published in Forensic Chemistry in 2022. Dkt. 194-15 at 4. But the true title of the article is "Distinguishing drug isomers in the forensic laboratory: GC–VUV in addition to GC–MS for orthogonal selectivity *and the use of library match scores as a new source of information*." The article was written by Kranenburg, et al. (Bynum ND is not listed as an author at all) and published in Forensic Science International in 2019. https://doi.org/10.1016/j.forsciint.2019.109900.

ORDER TO SHOW CAUSE - 5

and 'post-production degradation of stimulant compounds.' *Corrected*: Mr. Kababick explained that 'based on the literature, there is known degradatory properties to amphetamines over time.'").

Similarly, Plaintiff states that she cited *In re Washington Mut.* "for the wrong proposition" and that she had "considered citing" it for the proposition that "[i]n raising the affirmative defense of 'negative causation,' the defendant must show that on the face of the complaint, the alleged misrepresentation could not have caused a plaintiff's damages." Dkt. 195 at 2 n.2 (quoting *In re Washington Mut.*, 694 F. Supp. 2d 1192). This differs significantly from Plaintiff's original (mis)use of the case to argue that an "unclean hands" defense is only available when a plaintiff seeks equitable relief. Dkt. 178 at 20.[3]

Plaintiff has submitted dozens of inaccurate factual and legal citations across at least five different filings. Regardless of any use of generative artificial intelligence, erroneous citations suggest Plaintiff's counsel submitted these filings without "conduct[ing] a reasonable inquiry into the facts and the law" as required by Rule 11(b). *Oneto v. Watson*, No. 22-CV-05206-AMO, 2025 WL 2901666, at *1 (N.D. Cal. Oct. 10, 2025) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991)). "When confronted with similar situations, courts have ordered the filing attorneys to show cause why sanctions or discipline should not issue." *Wadsworth v. Walmart Inc.*, No. 2:23-CV-118-KHR, 2025 WL 515094, at *2 (D. Wyo. Feb. 6, 2025) (collecting cases). The Court finds such an order is appropriate here.

---

[3] Negative causation is an affirmative defense to claims under Section 11 of the Securities Act, which does not require proof of loss causation. *United Ass'n Nat'l Pension Fund v. Carvana Co.*, 759 F. Supp. 3d 926, 989 (D. Ariz. 2024), *reconsideration denied*, No. CV-22-02126-PHX-MTL, 2025 WL 371717 (D. Ariz. Feb. 3, 2025). It is unclear how such a defense—which Defendants do not raise—would apply here, where Plaintiff has the burden to prove causation.

ORDER TO SHOW CAUSE - 6

## II.   CONCLUSION

For the reasons discussed above, the Court ORDERS Plaintiff's counsel to SHOW CAUSE in writing by February 25, 2026 why she should not be sanctioned pursuant to Rule 11.

The written submission shall take the form of a sworn declaration. Plaintiff's counsel shall (1) detail all incorrect, misleading, or nonexistent citations and all incorrect or misleading assertions submitted to this Court; (2) provide a thorough explanation for how the incorrect citations discussed in this order were found or generated; and (3) to the extent that she used any artificial intelligence programs in preparing the submissions discussed in this order or any other submissions to this Court, Plaintiff's counsel shall include the names of those programs in her declaration.

Dated this 4th day of February, 2025.

Tiffany M. Cartwright
United States District Judge

ORDER TO SHOW CAUSE - 7