UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOANN LEDOUX,<br><br>    Plaintiff,<br><br>  v.<br><br>OUTLIERS, INC. (d/b/a THESIS, THESIS NOOTROPICS, FIND MY FORMULA, and FORMULA), a Delaware Corporation; DANIEL FREED, individually; MATT RUBIN, individually; BRAND NUTRACEUTICALS, INC. (d/b/a BRAND NUTRA), a New York Corporation; BRAND PACKAGING GRO,<br>    Defendants. | Case No. 3:24-cv-05808-TMC<br><br>ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT |

## I. INTRODUCTION

On October 28, 2025, this Court granted Defendants' motion to dismiss all claims against Daniel Freed and Matt Rubin pursuant to Federal Rule of Procedure 12(b)(6). Dkt. 169. Plaintiff moved to amend her complaint on November 13, 2025, seeking to "allege additional facts concerning [Freed and Rubin's] personal participation and intent" in her claims. Dkt. 173. For the reasons set forth below, the Court DENIES the motion.

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 1

## II.    BACKGROUND

The Court has previously discussed the facts of this case in detail and will not do so again here. Dkt. 202 at 2–8. In short, Plaintiff is a nurse for the Army who purchased nootropic supplement kits manufactured by Defendants. Dkt. 45 ¶ 100; Dkt. 113-1 at 239–41. She alleged these supplements were adulterated with amphetamines and other ingredients that Defendants failed to disclose. Dkt. 45 ¶¶ 92–94. Her primary theory of liability was that the supplements caused her to test positive on a routine drug screening and resulted in a court martial, a missed promotion, and various other damages. *Id*. ¶¶ 100–38.

On October 28, 2025, the Court granted Defendants' motion to dismiss (Dkt. 57) all claims against Daniel Freed and Matt Rubin—Thesis's CEO and Director of Supply Chain, respectively. Dkt. 169. The Court found that Plaintiff failed to allege that either Freed or Rubin was personally involved in any adulteration of Thesis supplements. *Id*. at 4–7. On January 9, 2026, the Court granted partial summary judgment and dismissed the amphetamine adulteration claims in their entirety against all remaining Defendants. Dkt. 202.

On November 13, 2025—after the Court dismissed the claims against Freed and Rubin, but before it dismissed all amphetamine adulteration claims—Plaintiff filed the present motion for leave to amend the complaint. Dkt. 173. Her proposed changes "are largely limited to the inclusion of additional factual allegations addressing the deficiencies identified in the Court's Order (Dkt. 169) concerning Defendants Mr. Freed and Mr. Rubin. . . . No new causes of action are asserted, and the amendment does not expand the scope of the existing claims." Dkt. 173 at 5.

## III.    LEGAL STANDARD

Once a district court issues a pretrial scheduling order and the deadline for amended pleadings expires, a motion for leave to amend is governed by Federal Rule of Procedure 16.

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 2

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord* LCR 16(b)(6). The Court employs a two-step analysis: it "first asks whether [Plaintiff] has satisfied Rule 16's more stringent 'good cause' requirement, and if good cause is shown, the court then considers whether amendment would be proper under Rule 15." *Kremerman v. Open Source Steel, LLC*, No. C17-953-BAT, 2018 WL 4700526, at *2 (W.D. Wash. Oct. 1, 2018).

Rule 16's good cause standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. A schedule modification is appropriate only if the amended pleading deadline could not be met despite the diligence of the moving party. *Id*. The Court's inquiry thus focuses on the moving party's reasons for seeking a modification and, "[i]f that party was not diligent, the inquiry should end." *Id*.

In assessing diligence, the Court may consider "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). The Court may deny leave to amend if Plaintiff "knew of the facts and theories at issue sufficiently in advance of the deadline to timely assert them." *Li v. Ne. Univ.*, No. 22-CV-00444-LK, 2023 WL 34592, at *3 (W.D. Wash. Jan. 4, 2023); *see, e.g., Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Lockheed's motion to amend came several months after the stipulated deadline for amending or supplementing the complaint. Nothing in the proposed amended complaint relied on facts that were unavailable before the stipulated deadline.").

## IV.   DISCUSSION

The deadline for amended pleadings in this case was May 22, 2025. Dkt. 37. Plaintiff submitted her motion for leave to amend on November 13, 2025. Dkt. 173. She has not shown

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 3

good cause to amend the case schedule and permit an amended complaint nearly six months after the deadline.

Plaintiff's opening brief makes clear that she seeks amendment only to repair the deficiencies that led to the Court's dismissal of her claims against Freed and Rubin. *See* Dkt. 173 at 11 ("These new factual allegations are consistent with the original pleading, expand upon the same course of conduct already alleged, and render the claims against Freed and Rubin plausible under the *Iqbal* and *Twombly* standards."). Plaintiff argues (1) that she was not aware of the complaint's deficiencies until the Court's October 28, 2025 dismissal order, and (2) that she learned new information about Freed and Rubin in their September 2025 depositions which addresses these deficiencies. Dkt. 188 at 5–7. Both arguments fail.

First, Defendants filed their motion to dismiss the claims against Freed and Rubin on March 18, 2025. Dkt. 57. In doing so, they put Plaintiff "on notice" that they "intended to defend the action on the ground that" she could not identify personal wrongdoing by Freed or Rubin. *Fed. Deposit Ins. Corp. v. Network Cap. Funding Corp.*, No. SACV1400967ABANX, 2015 WL 13916255, at *10 (C.D. Cal. Aug. 28, 2015). The Court then granted several extensions at the request of the parties, so that briefing on the motion was not complete until September 15, 2025. *See* Dkts. 82, 83, 104, 105, 107, 108. The Court issued its order the following month. Dkt. 169. Plaintiff did not seek to amend her complaint until November 13, 2025, nearly eight months after Defendants put her on notice of their arguments. Dkt. 173.

Plaintiff's assertion that she was unaware "that more specific allegations were required" until the Court granted dismissal on October 28 is unavailing. *Id*. at 5. As stated in the Court's dismissal order, Plaintiff failed to allege basic facts connecting Freed and Rubin to any alleged misconduct:

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 4

> Plaintiff's claims against Rubin suffer the same shortcomings as those against Freed. Plaintiff does not explain how Rubin's role as supply chain head would make him sufficiently involved in Thesis's alleged misconduct. Plaintiff does not allege facts to show how Rubin was responsible for designing, manufacturing, promoting, selling, or labelling the nootropic supplements at issue.
>
> Plaintiff argues Rubin "knew or should have known about the inclusion of prohibited NDIs and the absence of appropriate warnings, and that his conduct was a substantial factor in the distribution of the adulterated products to the consumer." Dkt. 128 at 12. But Plaintiff's complaint does not include facts from which one can infer *how* Rubin would have known about these things. For example, Plaintiff does not allege Rubin ever reviewed, discussed, or advised changes to product labels. Nor does Plaintiff allege that Rubin ever provided input on the chemical makeup of the Formula. Additionally, as Defendants point out, Plaintiff alleges the same claims against Rubin and Freed based on their positions—despite them having different roles at the company. Dkt. 57 at 9. Finally, Plaintiff provides no details on Rubin's court martial testimony or the "false order history records" from which the Court could infer that Rubin knew about the records' falsity. Nor does Plaintiff connect the factual allegations about Rubin's role in her court martial proceeding to the legal theories alleged in her complaint.

Dkt. 169 at 6–7. Upon learning of Defendants' motion to dismiss in March 2025, Plaintiff had ample opportunity to consider whether she needed to amend her complaint with additional facts about Freed and Rubin. Instead, as Defendants put it, Plaintiff "gamble[d]" on defeating the motion to dismiss and lost—forcing the Court to address claims that Plaintiff reasonably could have known were defective and sought to cure before the deadline for amended pleadings. Dkt. 179 at 2.

Second, Plaintiff argues for the first time in her reply that her September 2025 depositions of Freed and Rubin "provided specific facts about their personal participation" that show diligence and warrant amendment. Dkt. 188 at 3, 6. But Plaintiff made no mention of these depositions in her opening brief, Dkt. 173, and "district court[s] need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal.

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 5

2015) ("Courts decline to consider arguments that are raised for the first time in reply") (collecting cases).

Even if the Court considered this argument, Plaintiff's amendment comes too late. Although the date of Rubin's deposition is unclear, Freed's deposition took place on September 23, 2025. Dkt. 190-63. Plaintiff waited over seven weeks, until November 13, 2025, to seek amendment. Dkt. 173. "Courts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16." *Sako v. Wells Fargo Bank, Nat. Ass'n*, No. 14CV1034-GPC JMA, 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015); *see Schwerdt v. Int'l Fid. Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts from a witness's deposition does not constitute diligence under Rule 16).

Moreover, Plaintiff reaffirms throughout her briefing that it was the Court's dismissal order—rather than any new facts she learned from the depositions—that drove her to amend the complaint. *See* Dkt. 188 at 5 ("Plaintiff could not have met the May 22, 2025 deadline because the Court had not yet identified the deficiencies requiring cure. The motion to dismiss was filed March 18, 2025—after the scheduling order—and the Court did not rule until October 28, 2025. Only then did the Court identify that more specific allegations were required."). This suggests Plaintiff would have waited indefinitely for the Court to rule on the motion to dismiss (the decision on which was delayed at Plaintiff's request), while holding on to "specific factual allegations" from the depositions that could have addressed arguments first made in March 2025. *Id.* at 11.

These facts show a lack of diligence by Plaintiff and a failure to amend her complaint for nearly eight months. Thus, Plaintiff has not shown good cause to amend the scheduling order.

ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT - 6

## V.    CONCLUSION

The Court DENIES Plaintiff's motion for leave to amend the complaint. Dkt. 173.

Dated this 6th day of February, 2026.

Tiffany M. Cartwright
United States District Judge